IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                CRIMINAL ACTION NO. 2:09-cr-00223

TOMMY EDWARD YOUNG SR. and
TOMMY EDWARD YOUNG JR.,

           Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court are numerous objections to the Presentence Investigation Reports (PSRs) for Defendant Tommy Young Sr. (Young Sr.) and Defendant Tommy Young Jr. (Young Jr.). The purpose of this Memorandum Opinion is to set forth the Court's findings regarding these objections.

*I. BACKGROUND*

On October 1, 2009, Young Sr. and Young Sr. were charged in a seven-count indictment with violations of federal law relating to the interstate transportation, receipt, and sale of stolen property. Young Sr. was named in all seven counts, and Young Jr. was named in Counts One, Four, Six, and Seven. The Court conducted a jury trial in the above-styled case from March 2, 2010, to March 8, 2010. On March 8, 2010, the jury returned a verdict of guilty for Young Sr. on Counts One, Two, Three, Four, Five, and Six of the Indictment, and a verdict of guilty for Young Jr. on Counts One, Four, and Six of the Indictment. Specifically, the jury found Young Sr. and Young Jr. guilty of engaging in a conspiracy to receive, possess, transport, conceal, and sell stolen property,

including motor vehicles, in violation of 18 U.S.C. § 371 as charged in Count One; Young Sr. guilty of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. §§ 2312 and 2 as charged in Count Two; Young Sr. of possession of stolen goods in violation of 18 U.S.C. § 2315 as charged in Count Three;  Young Sr. and Young Jr. of possession of a stolen motor vehicle in violation of 18 U.S.C. §§ 2313 and 2 as charged in Count Four; Young Sr. of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. §§ 2312 and 2 as charged in Count Five; and Young Sr. and Young Jr. of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. §§ 2312 and 2 as charged in Count Six.  Young Sr. and Young Jr. were acquitted of the charge of possession of a stolen motor vehicle in violation of 18 U.S.C. §§ 2313 and 2 contained in Count Seven.

On March 9, 2010, the Court entered separate Judgment Orders for Young Sr. and Young Jr., directing the Probation Office to submit draft PSRs to the Government and counsel for Young Sr. and Young Jr. by May 26, 2010.  (Dockets 134 & 135.)  On June 1, 2010, the Court continued the sentencing hearings and directed the Probation Office to submit draft PSRs to counsel by July 7, 2010.  (Dockets 147 & 148.)  The Probation Office timely submitted the PSRs, and Young Sr. and Young Jr. timely filed objections. All  parties timely filed Sentencing Memoranda. (Dockets161, 164, 165, & 166.)  The Probation Office finalized the PSRs on August 19th (Young Jr.) and 26th (Young Sr.), 2010, and revised them on  November 10, 2010.  On November 26, 2010, the Government filed a Supplemental Sentencing Memorandum that details valuations of loss that it offers "in lieu" of several amounts currently listed in the PSR. (Docket 179 at 1.)  On December 21, 2010, the Government submitted a new objection to each PSR's calculation of Young Sr.'s and Young Jr.'s criminal history points.  Both Defendants concur with this objection.

2

Currently, Young Sr.,[1] Young Jr.,[2] and the Government have numerous outstanding objections to the PSRs. The Court heard oral argument on these issues on December 22, 2010. The matter is now ripe for the Court's consideration.

## II. DISCUSSION

### A. Loss Determination

First and foremost, Young Sr. and Young Jr. object to the Probation Office's calculation of the amount of loss incurred by their criminal conduct. Young Sr. and Young Jr. share a base offense level of six pursuant to U.S.S.G. § 2B1.1(a), and the "specific offense characteristic" provision of U.S.S.G. § 2B1.1(b) increases their offense level dependent upon the amount of loss attributable to their conduct. U.S. Sentencing Guidelines Manual § 2B1.1(b) (2010). The Probation Office suggests that the amount of loss attributable to Young Sr. is $549, 261.18, and the amount of loss attributable to Young Jr. is $468, 769.18. As these amounts are greater than $400,000.00 but less than $1,000,000, they result in a fourteen-level increase for both Defendants. U.S.S.G. § 2B1.1(b)(1)(H). Young Sr. and Young Jr. argue generally that the Government's evidence establishing the quantities of loss is unreliable.

The Government must establish the amount of loss involved in the conspiracy and attributable to each defendant by a preponderance of the evidence. *United States v. Miller*, 316 F.3d

---

[1] Young Sr. makes several general objections to the entirety of his PSR based upon his continued assertions of innocence. Given the jury's verdict, these objections are **OVERRULED**. Young Sr. also asserts numerous factual objections to the PSR, and is advised that, to the extent these objections are not addressed in this Opinion, the disputed factual issues will not affect sentencing. Fed. R. Crim. P. 32(c)(1).

[2] Counsel for Young Jr. indicated at the December 22, 2010, hearing that she wished to adopt Young Sr.'s arguments. To the extent applicable, the Court assumes an objection by Young Jr. to the portions of the PSRs that both Defendants share.

495, 503 (4th Cir. 2003); *United States v. White*, No. 03-4249, 2003 WL 22332377, at *3-4 (4th Cir. Oct. 14, 2003) (per curiam).  "Loss" can be measured by either "actual loss" or "intended loss," whichever is greater.  U.S.S.G. § 2B1.1 cmt. n.3(A).  "Actual loss" is the pecuniary harm that a defendant knew or should have known was a potential result of the offense. U.S.S.G. § 2B1.1 cmt. n.3(A)(i), (iii-iv).  "Intended loss" is the pecuniary harm that a defendant  intended to result from the offense. U.S.S.G. § 2B1.1 cmt. n.3(A)(ii).

The attributable amount of loss is derived from each defendant's "relevant conduct." U.S.S.G. § 1B1.3(a); *see also White*, 2003 WL 22332377, at *3.  "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," and "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" that occurred during the offense.  U.S.S.G. § 1B1.3(a)(1).  A "jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B).  Thus, a defendant is liable in relevant conduct for all of his own acts as well as the acts of his co-conspirators that are "[1] within the scope of the defendant's agreement and . . .  [2] reasonably foreseeable to the defendant."  *United States v. Gilliam*, 987 F.2d 1009, 1012-13 (4th Cir. 1993).

The Court "need only make a reasonable estimate of the loss. . . . based on available information." U.S.S.G. § 2B1.1 cmt. n.3(C); *see also Miller*, 316 F.3d at 503.  Pertinent factors for the Court's consideration include "[t]he fair market value of the property unlawfully taken, copied, or destroyed," "the cost to the victim of replacing that property," "[t]he cost of repairs to the damaged property," "[t]he approximate number of victims multiplied by the average loss to each

4

victim," and "[m]ore general factors, such as the scope and duration of the offense." U.S.S.G. §

2B1.1 cmt. n.3(C). A district court has "considerable flexibility" in determining loss, *United States*

*v. Seals*, No. 91-5604, 1992 WL 49185, at *3 (4th Cir. March 17, 1992) (per curiam), and "may

consider relevant information without regard to its admissibility under the rules of evidence at trial,

provided that the information has the sufficient indicia of reliability to support its probable

accuracy." U.S.S.G. § 6A1.3(a); *see also* 18 U.S.C. § 3661.

*(1) Government's Calculation of Loss Quantity*

The relevant conduct in this case can be divided into two separate categories: (1) the stolen

items specifically named in the Indictment, and (2) the additional stolen items seized from the

properties of the Youngs and the named co-conspirators Dennis Marcum and Jay Summerfield.

The first category of attributable loss lies in the offense conduct of the counts of conviction.

The Probation Office drew these loss amounts directly from the values of the stolen property that

were listed in the counts of the  Indictment itself.  The Government suggests in its November 26,

2010, Supplemental Sentencing Memorandum that the Court should instead rely upon the testimony

elicited at trial concerning the value of these items.  (Docket 179 at 1.)  The Court agrees.  The jury

was not called upon to make a specific finding as to the value of the items named in the Indictment,

and as such the Court must make an independent determination at sentencing.  For this category of

relevant conduct, the Government's evidence consists of the testimony and evidence that was

presented at trial. This evidence includes owners' estimations of the value of their stolen item at the

time it was taken, retailers' testimony as to the wholesale or retail prices of their new stolen items,

and testimony concerning insurance settlements for the stolen items.

As for the second category of attributable loss, at the December 22, 2010, hearing in this matter, the Government provided as exhibits three itemized lists of valuations for the items seized from the Young, Summerfield, and Marcum properties. (Docket 185 at 2, 4, 6). Special Agent Jack Remaley (SA Remaley) of the Federal Bureau of Investigation testified that the sums offered by the Government were primarily derived from information contained in the police reports prepared for the stolen items as well as the supporting documentation for those reports, which were compiled with the assistance of numerous police and sheriff's departments. SA Remaley further testified that the National Insurance Crimes Bureau had assisted with these valuations. Where new items had been stolen from retail lots, SA Remaley testified that the values listed in the police reports were the retail values of the stolen item. Where used items had been stolen from owners, SA Remaley testified that the value in the police report was either the insurance settlement for the stolen item or the owner's own estimation of the value of their stolen item at the time it was taken.

Once again, the Guidelines do not demand absolute precision in loss calculations. U.S.S.G. § 2B1.1 cmt. n.3(C) ("The court need only make a reasonable estimate of the loss. . . based on available information."). The Government has essentially presented two categories of evidence to support their estimations in this case. First, the Government offers  values based upon police reports, police documentation, and insurance information. Notably, in a case remarkably similar to the one at bar, the Fourth Circuit affirmed a district court's reliance on "the amount of loss [in] the presentence report which calculated the value of the stolen machines based on insurance and police reports provided by the FBI" when determining the amount of loss in a case involving stolen heavy equipment. *United States v. Schulte*, No. 96-4578, 1998 WL 77851, at *3 (4th Cir. Feb. 24, 1998) (per curiam). Second, the Government has offered the testimony of witnesses concerning the value

of their stolen items.  To the extent that the owners and employees of retail outlets have testified as to the "sticker" or "wholesale" price of their stolen goods, the Court has no hesitation in crediting these estimates. *See Seals*, 1992 WL 49185, at *3 ("In evaluating losses to retail outlets it is reasonable to measure fair market value in terms of the retail value of the goods, as the district court did in this case.").  Further, the non-retail owners of the stolen goods who testified in this case were generally people with a great deal of experience with construction equipment; pertinent examples include an industrial pipe-fitting company, various construction companies, and a farmer. Moreover, counsel for Defendants had a full opportunity to cross-examine every witness that has testified as to the value of their stolen items.  As described in more detail in the discussion of the specific testimony below, the Court finds that the statements of the lay witnesses in this case contain sufficient "indicia of reliability"  to serve as reliable estimates of their loss.  U.S.S.G. § 6A1.3(a).

Although it does not diminish the Government's burden in any sense, the Court would also emphasize that, at the evidentiary hearing in this matter, counsel for Defendants declined to utilize an expert or offer any competing testimony or evidence concerning the value of these items. *See generally United States v. Marshall*, Nos. 89-5411, 89-54143, 1990 WL 2270, at *3 (4th Cir. Jan.11, 1990) (per curiam) (holding that the government had satisfied its burden of proving an aggravating sentencing factor where it submitted an unverified police report and defendant did not submit any evidence to contradict that report).  Quite literally, the "available information" with which the Court is to make its findings consists only of the information provided by the Government and Probation Office. U.S.S.G. § 2B1.1 cmt. n.3(C).

Given the sheer volume of information in this case, the Court's analysis of the relevant conduct will proceed in two steps.  First, the Court will separately address both categories of

relevant conduct, summarize the available evidence of value, and determine whether the Government has established by a preponderance of the evidence the corresponding amount of loss attributable to the conspiracy, noting where the evidence supports a finding of either Young Sr. or Young Jr.'s direct involvement with a particular item.  Second, as "a defendant's relevant conduct may not extend to all the conduct of the conspiracy," the Court will conduct an individualized examination of the appropriate attribution of the stolen items to each Defendant. *United States v. Newsome*, 322 F.3d 328, 339 (4th Cir. 2003).

### (2)  Indictment Losses

What follows is a summation of the trial testimony supporting a loss valuation for the item described in each overt act charged in the conspiracy, excluding Overt Act (j) and Count Seven.[3] Overlap with the substantive counts as well as the defendant named in each charge is noted.  Where testimony indicated even a slight range of  values, the Court attributes the lowest amount supported by the testimony to the pertinent Defendants' conduct.

### a. Overt Act (a) (Sr. & Jr.)

As part of the Count One conspiracy, the Indictment charged Young Sr. and Young Jr.  with the overt act of knowingly possessing and selling a stolen New Holland Model 190 skid steer with an attachment. The skid steer was stolen on  June 26, 2003,  from Mark Stine, a sawmiller and beef farmer located in Cumberland, Ohio.  Stine testified at trial that the skid steer was a 2003 model with approximately 200 hours, which was "very low." (Docket 152 at 47.)  He testified that he purchased

---

[3]  A discussion of the acquitted conduct charged as Overt Act (j) and substantive Count Seven is grouped with  the analysis of the relevant conduct stemming from the search of Dennis Marcum's farm.

it for $35,000.00 from Ross Equipment, (*Id.* at 47), at which time he also purchased a "true sheerer" attachment for it at an additional cost of "$10,000 to $12,000." (*Id.* at 48.)

Although there is no way to know if the jury relied on this particular overt act when it convicted Young Sr. and Young Jr. of the conspiracy charge, testimony at trial established that Young Sr. and Young Jr. were together when they sold the stolen skid steer to William Bishop. As such, the Court finds it appropriate to attribute this item to both Defendants as a part of their direct participation in the conspiracy. U.S.S.G. § 1B1.3(a)(1)(A). Mr. Stine's recollection of the recent purchase price of the stolen item, as well as its "good" condition and "low" mileage, (Docket 152 at 47), provides an objective measure for the fair market value of the skid steer. Accordingly, the Court finds that $45,000 is a reasonable estimate of value of this item.[4]

### b. Overt Act (b) (Sr.)

As part of the Count One conspiracy, the Indictment charged Young Sr. with the overt act of knowingly possessing and selling a stolen 2000 Takeuchi excavator. The excavator was stolen on March 26, 2004, from the equipment rental company United Rentals. Mark Warren, an employee at United Rentals, testified that the "book value" of the excavator at the time it was stolen was approximately $32,000 to $33,000. (Docket 152 at 108.) In support, Warren noted that United Rentals paid a $10,000 deductible in insurance and their self-run insurance plan incurred an additional $22,000 to $23,000 liability as a result of the theft. (*Id.* at 107.)

---

[4] Although some amount of depreciation inevitably occurred between when the item was purchased and when it was stolen, the Court has only been provided with the retail value and has been given no basis to calculate depreciation. Given that the item was relatively new, the $45,000 figure provides, at the very least, a reasonable estimate of what the item was likely worth. As any value difference caused by the depreciation of this item would be inconsequential to the guideline calculations, the Court finds that a more specific figure is not necessary in this case.

Again, there is no way to determine whether the jury relied on this overt act, but testimony at trial established that Young Sr. sold the stolen excavator to Dana Holcomb soon after it had been stolen, and it is thus properly considered as a part of Young Sr.'s direct participation in the conspiracy. U.S.S.G. § 1B1.3(a)(1)(A). Warren's testimony as to the "book value" of this used item, as well as his description of the insurance deductibles and payments, establishes $32,000 as an appropriate estimation of the fair market value of this item.

*c. Overt Act (c) (Substantive Count Two) (Sr.)*

Charged as both an overt act of the conspiracy and substantively as Count Two, the jury convicted Young Sr. of knowingly transporting in interstate commerce a stolen Caterpillar Model 227 skid steer. The skid steer was stolen on April 15, 2005, from a construction site owned by Peterson Contractors. Donald Garaventa, a supervisor on the site, testified at trial that the skid steer was in "very good condition" and was worth "47, 285.00 at the time" that it was stolen. (Docket 153 at 57.) On cross, counsel for Young Jr. elicited testimony that Garaventa's valuation information was based on what "the [Peterson Contractors] office told him." (*Id.* at 63.) On redirect, the Government confirmed that Gaventa had "dealt with a lot of equipment," and he answered affirmatively the government's question of whether "$47,000 [was] a fair value" for the cost of the skid steer. (*Id.* at 65.)

Garaventa testified that he worked with this type of equipment on a day-to-day basis, had discussed the value of the stolen skid steer with his company, and believed that "47,000" was a "fair value" for the item. Accordingly, the Court finds that it is appropriate to attribute $47,000 for this piece of equipment to Young Sr.'s relevant conduct. U.S.S.G. § 1B1.3(a)(1)(A).

10

### d.  Overt Acts (d & e) (Substantive Count Three) (Sr.)

Charged as both an overt act of the conspiracy and substantively as Count Three, the jury convicted Young Sr. of possessing stolen goods, specifically a "Haulin brand enclosed trailer with equipment and other goods." (Docket 1 at 4, 7.)   The trailer and other items were stolen from Speciality Fitters, an industrial piping company, on July 8, 2005.  Cornell Mentor, the president of the company, testified that the total value of the stolen trailer and accompanying items was $36,000 at the time it was stolen. (Docket 153 at 96.)   Mentor also offered testimony concerning the deductible the company had to pay and the eventual insurance settlement that it received. (*Id.* at 95.) This valuation was further supported by the inventory sheet of Speciality Fitters offered into evidence. (*Id.* at 93; Gov't Trial Exh. 16.)  Given the testimony and evidence offered in support of this unambiguous estimation, the Court finds that a value of $36,000 is appropriately applied to Young Sr. as the fair market value of these items. U.S.S.G. § 1B1.3(a)(1)(A).

### e.  Overt Act (f) (Substantive Count Four) (Sr. & Jr.)

Charged as both an overt act of the conspiracy and substantively as Count Four, the jury convicted Young Sr. and Young Jr. of possessing a stolen motor vehicle, specifically a "Bobcat Mini Excavator." (Docket 1 at 4, 8.)  The excavator, which was approximately three years old and in "good" condition, was stolen from a construction site utilized by Dale Yost Construction between March 5th and 6th of 2006. (Docket 153 at 170-71.)  Robert Yost, the son of the owner, testified that the Mini Excavator was worth "[p]robably around $30,000" at the time it was stolen. Yost later said that his estimation of value was based upon the information provided to him by an equipment supplier, D.H. Pace, Co., as to "what they thought the values were at that time based on the number

hours and the amount of years that we had the equipment," which he had requested for insurance purposes. (Docket 153 at 176.)

Yost testified that he regularly worked with heavy construction equipment, was familiar with the item at issue, and had conferred with a retailer as to the fair market value of the used item at the time it was stolen.  As such, the Court finds that it is appropriate to attribute $30,000 for the stolen excavator to Young Sr. and Young Jr. U.S.S.G. § 1B1.3(a)(1)(A).

### f.   Overt Act (g) (Substantive Count Five) (Sr.)

Charged as both an overt act of the conspiracy and substantively as Count Five, the jury convicted Young Sr. of the interstate transportation of a stolen motor vehicle, specifically a New Holland skid steer loader.  (Docket 1 at 4, 9.)  The skid steer loader was stolen from Frances A. Puster of Ashland County, Ohio, on March 6, 2008. (Docket 154 at 142.)  Ms. Puster testified that she received an insurance settlement of $9,658.00 for the theft, and information regarding her claim was submitted into evidence.  (*Id.* at 144; Gov't Trial Exh. 51.)  The Court finds that the insurance settlement is conclusive proof of the value of the stolen item.  Although Young Jr. was not named in this count, the Court credits Jay Summerfield's testimony that he, along with  "Dean Hartsel, Tommy Young Sr., and Tommy Young, Jr," stole this item, (Docket 153 at 199), testimony which is corroborated by Dean Hartsel.  (Docket 154 at 94.)  The value of the skid steer loader should thus be attributed to both Young Sr. and Young Jr. as a part of their direct participation in the conspiracy. U.S.S.G. § 1B1.3(a)(1)(A).

### g.   Overt Act (h) (Sr. & Jr.)

As part of the conspiracy charged in Count One, the Indictment charged Young Sr. and Young Jr. with the overt act of  knowingly transporting a stolen good across state lines, specifically

a 2007 Liberty tandem axle trailer "with a value of approximately $5,000." (Docket 1 at 4-5.)  The

Liberty trailer was stolen on either April 5, 2008, or May 5, 2008,[5] from Raymond Mills of Gilead,

Morrow County, Ohio.  Mills did not testify as to the value of the trailer at trial. At the December

22, 2010, evidentiary hearing in this matter, the Government provided an exhibit confirming the

$5,000 sum listed in the Indictment. (Docket 185 at 3.)  Agent  Jack Remaley testified that this

figure came from the police report, and he implied that the $5,000 sum may have included an

"invention" of Mills' that was stolen with the trailer.  The testimony on this point is unclear;

however, even if Mills included the value of the invention in the police report of the stolen trailer,

the Court will not dismiss his valuation.  Mills testified at trial that he was a self-employed designer

of miniature rigs for the oil and gas business, (Docket 154 at 147), and the item stolen with the

trailer was created pursuant to this business.  As such, Mills is in a position to place a reasonable

estimate as to the fair market value of this item, and the Court will credit his estimate.

Although there is no way to determine whether the jury relied on this overt act, the evidence

presented at trial established that the trailer was found on the property utilized by co-conspirator Jay

Summerfield, who also testified that he had received  the trailer with the drilling attachment from

Young Sr. and Young Jr. (Docket 153 at 208-210.)  The reasonable estimate of $5,000 for the value

of the  trailer is thus properly considered as a part of Young Sr.'s and Young Jr.'s direct participation

in the conspiracy. U.S.S.G. § 1B1.3(a)(1)(A).

---

[5] The Court notes there is some confusion on this issue; after referencing the police report that he had filed, Mills testified at trial that the trailer was stolen on April 5, 2008. (Docket 154 at 155.) However, the summation sheets provided to the Court list a date of May 5, 2008.

### h. Overt Act (i) (Substantive Count Six) (Sr. & Jr.)

Charged as both an overt act of the conspiracy and substantively as Count Six, the jury convicted Young Sr. and Young Jr. of the interstate transportation of a stolen motor vehicle, specifically a "Kubota B26 tractor with loader and backhoe." (Docket 1 at 5, 10.)  These items were stolen from the retail lot of Hurst Tractor in Washington County, Ohio, on May 9, 2008.  Kirk James Warner, an employee of Hurst Tractor, testified at trial that the equipment was new and had recently been purchased from Kubota Tractor Corporation (Docket 154 at 164; Gov't Trial Exh. 54.)  The invoices from the Kubota Tractor Corporation contained the wholesale values of each item stolen on May 9, 2008: the tractor invoiced at $14,454, the loader for $3,960, the backhoe at $6,125.00. (Docket 154 at 166, Gov't Trial Exh. 54.) The total value of stolen items is thus $24, 539.

Just as retail price is an appropriate measure for a new item stolen from a retail outlet, the wholesale price articulated by Warner and supported by the evidence is also a reasonable measure of value for these items.  As such, the Court adopts the above values of the stolen items as appropriate measures of the loss stemming from this Count, and attributes the value to Young Sr.'s and Young Jr.'s relevant conduct for their direct participation in the conspiracy. U.S.S.G. § 1B1.3(a)(1)(A).

### i. Conclusions

The "total loss" flowing from the offense conduct constituting the counts of conviction can thus be articulated as follows:

| Indicted Conduct | | | | | |
|---|---|---|---|---|---|
| **Overt Act / Count** | **Item** | **Value** | **Date Stolen** | **Victim** | **Direct Participation** |
| Overt Act (a) | New Holland 190 Skid Steer with attachment | $45,000 | 06/26/2003 | Mark Stine | Sr. & Jr. |
| Overt Act (b) | 2000 Takeuchi Excavator | $32,000 | 03/26/2004 | United Rentals | Sr. |
| Overt Act (c) Count Two | Caterpillar 227 Skid Steer | $47,000 | 04/15/2005 | Peterson Contractors | Sr. |
| Overt Acts (d & e) Count Three | Haulin Enclosed Trailer with Equipment | $36,000 | 07/08/2005 | Specialty Fitters | Sr. |
| Overt Act (f) Count Four | Bobcat Mini Excavator | $30,000 | 03/05/2006 - 03/06/2006 | Dale Yost Construction | Sr. & Jr. |
| Overt Act (g) Count Five | New Holland Skid Steer | $9,658 | 03/06/2008 | Frances Puster | Sr. & Jr. |
| Overt Act (h) | Liberty Tandem Axel Trailer | $5,000 | 04/05/2008 or 05/05/2008 | Raymond Mills | Sr. & Jr. |
| Overt Act (i) Count Six | Kubota B26 Tractor | $14,454 | 05/09/2008 | Hurst Tractor | Sr. & Jr. |
| | Loader | $3,960 | | | |
| | Backhoe | $6,125 | | | |

*(3)  Unindicted Relevant Conduct*

The second category of relevant conduct is the uncharged conduct attributed to Young Sr. and Young Jr. in the PSRs.  These additional loss attributions consist of the value of the stolen items not named in the Indictment that were found during searches of the Young property, the

15

Summerfield properties, and the Marcum property.  Briefly, the Court notes that the stolen items seized from these properties are part and parcel of the activity that constituted Defendants' conspiracy conviction, and subject to an individualized inquiry as to each Defendants' participation, the value of the items seized on these properties are properly considered as potential relevant conduct stemming from the conspiracy.  U.S.S.G. § 1B1.3(a).  As described at trial, the overall structure of the conspiracy charged in Count One consisted primarily of Young Sr. and Jr. utilizing the properties of Jason Summerfield, Jay Summerfield, and Dennis Marcum to store stolen items, including motor vehicles, for eventual sale.  Summerfield and Marcum testified to receiving the unindicted stolen items from the Youngs while the conspiracy was ongoing, and these transactions involved  the same overarching criminal purpose, the same co-conspirators, and the exact same pattern of activity as the specific offenses described in the Indictment. There is no discernable difference (and indeed, there is even some overlap) between the items specifically named in the Indictment and the items located on the Summerfield, Young, and Marcum properties.

### a. Young Property

On March 30, 2006, a search warrant was executed on "Boyd Farm," the property where Young Sr. and Young Jr. resided.  Located on the property were (1) a red 1998 Cargo Express enclosed trailer, reported stolen on July 15, 2004, from Mazoo Contractors, Inc., valued by the Government at $2,492; (2) an eighteen foot Hudson flatbed trailer, reported stolen on March 25, 2006, from Trio Concrete, valued by the Government at $4,000; (3) an eighteen foot Appalachian trailer, reported stolen from Northwest Services, valued by the Government at $3,100, and (4) a black Cronkite trailer, reported stolen between March 5th and 6th of 2006 from Dale Yost Construction at the same time as the Bobcat mini excavator named in Overt Act (f) and Count Four, valued by Robert Yost at "right around $3,500." (Docket 153 at 171.)

16

The above values advocated by the Government were derived from the testimony at trial as well as the summary exhibit provided at the December 22, 2010, hearing.  (Docket 185 at 6.)   For the reasons noted above, the Court credits Robert Yost's estimate as to the value of the Cronkite trailer.  SA Remaley testified that the values for the other three items came from either the police reports or the police documents for the stolen items.  He also stated that he had gone through the documents himself and verified the information.  The Court credits this testimony and adopts these values as a "reasonable estimate of the loss" stemming from the offense conduct of the conspiracy. U.S.S.G. § 2B1.1 cmt. n.3(C).

### b. *Summerfield Properties*

On July 24, 2008, a search warrant was executed on Jason Summerfield's rural property (Summerfield farm), and numerous items of stolen property were retrieved.  On July 25, 2008, a search was conducted of Jay Summerfield's personal residence, and several more items of stolen property were retrieved.  Young Sr.'s and Young Jr.'s PSRs contain a list detailing the value of each piece of property seized from these residences.  Excluding the value of the items that were also named in the Indictment so as to avoid double counting, the Probation Office counted the value of each stolen item found on the Summerfield farm and residence toward Young Sr.'s and Young Jr.'s relevant conduct.

The Government presented its estimations of the values for the items seized from the Summerfield farm and residence at the December 22, 2010, hearing.  (Docket 185 at 2-3.)  In addition to the summary exhibit provided to the Court, SA Remaley focused much of his testimony on the items retrieved in these searches.  The table below notes the suggested value of the seized items, identifies the materials from which that value was derived, and notes the trial testimony directly implicating the Youngs in the property at issue.  As no separate evidence of the appropriate

victim was provided to the Court, the listed victims are derived from the list of "rightful owners" in the PSRs.

| Summerfield Seized Items | | | | |
|---|---|---|---|---|
| Item | Value | Date Stolen | Victim | Direct Participation[6] |
| New Holland TN85A Tractor | $30,000 (police report) | 04/18/2008 - 05/09/2008 | Muskingham Tractor and Equipment | Sr. & Jr. (Docket 153 at 229-30); (Docket 154 at 56) |
| John Deere Tractor with Loader | $24,694 (retail) | 06/23/2008 - 06/24/2008 | Shearer Equipment | Sr. (Docket 153 at 222-23)[7] |
| Kubota BX 2350 4wd mower with 60" mowing deck | $1,450.14 (wholesale) (Docket 154 at 165, Gov't Trial Exh. 54) | 05/09/2008- 05/10/2008 | Hurst Tractor and Equipment | Sr. & Jr. (Docket 153 at 211-216); (Docket 154 at 8) |
| 2005 Polaris Sportsman 800 ATV | $10,000 (police report) | 07/17/2007 | Shearer Equipment | Sr. (Docket 153 at 234) |

---

[6] The Court has directly attributed items to Young Sr. that were not specifically referenced in the testimony, due to Summerfield's broad statements connecting Young Sr. to "every one" of the items that were seized. (Docket 153 at 234.)  This is discussed in more detail in the section addressing Young Sr.'s attributable relevant conduct.

[7] Although Summerfield testified that he had actually stolen this tractor to give to Young Sr., who then rejected it, Summerfield further testified, corroborated by Dean Hartsel, that Young Sr. had requested the tractor, provided Summerfield with the appropriate keys so that he could steal one, and subsequently refused to take possession because the tires were too large.  Given these circumstances, Summerfield's theft, transport, possession, and storage of this item can be directly attributed to Young Sr.  *See* U.S.S.G. § 1B1.3(a)(1)(A) ("all acts an omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant").

18

| | | | | |
|---|---|---|---|---|
| 1993 Kawasaki KLX 650 | $1,000 (police document) | 01/21/2008 | Thorn Equipment | Sr. (Docket 153 at 234); (Docket 154 at 9) |
| New Holland 847 Round Haybaler | $3,000 (police report) | 06/26/2008 | Shearer Equipment | Sr. (Docket 153 at 226-27) |
| Kubota RTV1100CW-H vehicle | $13,817.68 (retail) | 06/13/2008 | Moore's Lawn and Garden | Sr. & Jr. (Docket 153 at 231-234); (Docket 154 at 9) |
| 2005 Mortiz International Tandem Axle Trailer | $4,000 (police report) | 03/17/2008 | Rock's Trailer Services | Sr. (Docket 153 at 234); (Docket 154 at 10) |
| Bobcat Skid Steer | $23,000 (police report) | 05/05/2008 | Rock's Trailer Services[8] | Sr. (Docket 153 at 234); (Docket 154 at 11, 53) |
| Husqvarna Weed Eater<br><br>Husqvarna Weed Eater<br><br>Husqvarna Chain Saw<br><br>Husqvarna Push Mower | $223.40 (retail)<br><br>$254.76 (retail)<br><br>$281.76 (retail)<br><br>$224.87 (retail) | 06/13/2008 | Moore's Lawn and Garden | Sr. (Docket 153 at 234);(Docket 154 at 9-10) |

---

[8] It is unclear to the Court whether this recovered Bobcat is the same as the Bobcat stolen from Raymond Mills. (Docket 154 at 11, 53).  The Court will simply note that if this is the same  Bobcat as that stolen from Raymond Mills, both Young Jr. and Young Sr. were directly involved. (Docket 153 at 206-11).  This confusion does not affect the number of victims nor the attributable amount of loss.

| Whiteman Power Trowel | $2,526 (police report) | 06/22/2008 | Moore's Lawn and Garden | Sr. (Docket 153 at 234); (Docket 154 at 11) |
|---|---|---|---|---|

The Court finds that the police reports and retail valuations, as presented to the Court by SA Remaley and summarized above, provide sufficiently reliable estimations of the value of these items to establish the relevant amount of loss by a preponderance of the evidence. As such, the Court adopts the values advocated by the Government for the items listed above.

In addition to the list above, the Probation Office also attributes to both Young Sr. and Young Jr. the value of several items seized from Jay Summerfield's personal residence: (1) a 2005 Dodge flatbed truck, reported stolen on March 17, 2008, from Mohican Farms, Holmes County, Ohio, valued at $25,100; and (2) approximately $3,271.18 worth of stolen equipment from Ohio, including a boxer trailer, digital laser tools, various types of saws, push mowers, and weed-eaters, stolen from Moore's Lawn and Garden in Millsburg, Ohio, Platform Cement in Willoughby, Ohio, and Snavely Construction in Shagin Falls, Ohio. These items were not discussed at the trial nor at the December 22, 2010, hearing, and have not been identified in any of the Government's exhibits. Given the dearth of information provided to the Court as the source of these valuations, the Court finds that the Government has not shown by a preponderance of the evidence that these items should be attributed to the relevant conduct of either Young Sr. or Young Jr. As such, the Court excludes the value of these items from Defendants' relevant conduct.

### c. Dennis Marcum's Residence (Acquitted Conduct)

On August 24, 2008, state troopers searched Dennis Marcum's property with his consent. Twelve pieces of stolen property were recovered, and Marcum maintained in a subsequent police

interview that he had received all but four of those items from the Youngs as a part of their ongoing conspiracy. Marcum confirmed the Youngs' connection to these items in his testimony at trial, and the Probation Office attributed the estimated value of these eight pieces to the amount of loss stemming from Young Sr.'s and Young Jr.'s relevant conduct.

At the December 22, 2010, hearing, the Government presented an itemized list detailing the values of seven of the items as derived from police reports and insurance information. (Docket 185 at 4-5).[9] SA Remaley testified that all of the stolen items on this list were connected to the Youngs by virtue of the evidence and the investigation of this case, and he noted that the list excluded several items found on the Marcum property that could not be directly attributed to the Young conspiracy. The table below details the value of these seven items seized from the Marcum property as determined from both the testimony elicited at trial and the evidence presented by the Government in the December 22, 2010, hearing. The table also notes where Marcum explicitly referenced one of the Youngs' involvement with a stolen item.

| Marcum Property Seized Items | | | | |
|---|---|---|---|---|
| **Item** | **Value** | **Date Stolen** | **Victim** | **Direct Participation** |
| 2008 Ford F-650 Rollback (Acquitted Count Seven) | $73, 900 (testimony / retail) (Docket 154 at 218) | 08/12/2008 | Tom Masano Ford | Young Sr. (Docket 154 at 227-228) |

---

[9] The Court notes that the PSRs for both Defendants also list a 2006 Hallmark Cargo 20', valued at $5,999, as the attributable value of an item seized from the Marcum property. However, although this item is listed in the Government's summary exhibit, no value is noted, and SA Remaley offered no testimony concerning this value at the December 22, 2010, hearing. As such, the Court excludes this item from its calculations.

| 2007 Chevrolet Colorado | $15,000 (police report) | 06/21/2008 | not provided | Young Sr. (Docket 154 at 241- 243) |
|---|---|---|---|---|
| 2006 Ford Mustang | $17, 684 (insurance settlement) | 12/28/2007 | not provided | Young Jr. (Docket 154 at 243-44) |
| 2006 Equipment Pro 20' | $2,600 (police report) | 05/09/2008 | not provided | |
| 2005 Caterpillar Excavator | $34,500 (police report) | 05/08/2008 | not provided | |
| 2002 Woodchuck | $18,000 (police report) | 03/11/2008 | not provided | |
| 1999 Harley Davidson XL Series | $5,028 (insurance company) | 05/01/2008 | not provided | |

Notably, the Indictment in this action, in both Overt Act (j) of the Count One conspiracy and again in Count Seven, charged Young Sr. and Young Jr. with the possession of a stolen motor vehicle, specifically the above-mentioned "2008 Ford F-650 Rollback" found on the Marcum property.  The jury acquitted both Young Sr. and Young Jr. of Count Seven, which also constituted the only overt act listed in Count One that specifically named Dennis Marcum as a co-conspirator in the Youngs' criminal activities.  As such, in addition to their general objections concerning the Government's techniques for determining the value of the stolen property, Young Sr. and Young Jr. categorically object to the propriety of the Probation Office's attribution of the stolen property seized from Dennis Marcum's farm.

Defendants argue that, as they were both acquitted of Count Seven, which was the only count involving  Dennis Marcum, it is inappropriate to consider Marcum's testimony or the items found on his property when determining their relevant conduct.  Although Defendants cite to *Blakely v.*

22

*Washington*, 542 U.S. 296 (2004), and *Gall v. United States*, 552 U.S. 38 (2007), in support of the proposition that it is inappropriate as a matter of law to consider acquitted conduct as relevant conduct, this position has been categorically rejected by the Fourth Circuit and will not avail Defendants here.  *See United States v. Grubbs*, 585 F.3d 793, 798-99 (4th Cir. 2009) (describing "clear Supreme Court and Fourth Circuit precedent holding that a sentencing court may consider uncharged and acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence"); *United States v. Ibanga*, No.06-4738, 2008 WL 895660, at *3 (4th Cir. April 1, 2008) (holding, post-*Blakely* and *Gall,* that it was "significant procedural error" for a district court to "categorically exclud[e] acquitted conduct from the information that it could consider in the sentencing process").

The appropriate inquiry for the Court is whether the Government has proven the acquitted conduct involving Dennis Marcum by a preponderance of the evidence. *Grubbs*, 585 F.3d at 799. Although Defendants argue that the jury verdict proves Marcum to be an unreliable witness, the Court is not so convinced.  Putting aside the myriad reasons the jury may have acquitted Young Sr. and Young Jr. of the charges contained in Count Seven, the standard of proof at sentencing requires less exacting findings than "beyond a reasonable doubt."  Based upon the Court's observations of Dennis Marcum's testimony at trial, the Court finds by a preponderance of the evidence that he was a reliable witness in this matter and provided credible testimony concerning the conspiracy and Defendants' criminal conduct.  Moreover, the Court credits SA Remaley's testimony that each of the items on the above table is connected to the Young conspiracy.  Accordingly, it is appropriate to consider Marcum's testimony and the items found on his property as potential relevant conduct for the conspiracy.

The Court finds that the values for the stolen property contained in the police reports, retail valuations, and insurance documents, as presented to the Court by SA Remaley and summarized above, provide sufficiently "reliable estimates" of the value of the items seized from Marcum's property to establish a relevant amount of loss attributable to the conspiracy by a preponderance of the evidence. U.S.S.G. § 2B1.1 cmt. n.3(C).  As such, the Court adopts the values advocated by the Government for the property listed above.

*(4) Attribution of Relevant Conduct*

The principles of relevant conduct dictate that a defendant be held accountable for all the harm resulting from each act or omission that he directly "committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused" in the course of the offense conduct.  U.S.S.G. § 1B1.3(a)(1)(A).  In addition, a defendant in a jointly undertaken criminal activity is held responsible for all the harm resulting from the "reasonably foreseeable acts and omissions *of others* in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (emphasis added).  Before holding a defendant accountable under U.S.S.G. § 1B1.3(a)(1)(B), the Court must make specific findings that the acts of others taken in furtherance of the jointly undertaken criminal activity are "[1] within the scope of the defendant's agreement [to the jointly undertaken criminal activity] and . . . [2] reasonably foreseeable to the defendant." *Gilliam*, 987 F.2d at 1012-13; *United States v. Bolden*, 325 F.3d 471, 499 (4th Cir. 2003) (requiring particularized findings).

The "scope of the defendant's agreement" to criminal activity consists of "the scope of the specific conduct and objectives embraced by the defendant's agreement" and can be appropriately inferred from the parties' conduct. U.S.S.G. § 1B1.3 cmt. n.2.  This inquiry focuses on the "role the defendant agreed to play in the operation." *Bolden*, 325 F.3d at  499 (quoting *United States v.*

24

*Studley*, 47 F.3d 569, 575 (2d Cir.1995)).  Whether the jointly undertaken criminal activity is also "reasonably foreseeable" to the individual defendant is dependent on the facts of each case.  *See generally Gilliam*, 987 F.2d at 1012-13.

### a. Young Sr.

The testimony and evidence presented at trial establishes that Young Sr. was intimately and directly involved in the  transportation, receipt, possession, storage, concealment, or sale of almost every piece of stolen property that has been recovered in this case, including the stolen items seized from the Young, Summerfield, and Marcum properties.  However, to the extent that evidence of Young Jr.'s active participation has not been established, the Court finds that he remains accountable for the remainder of the relevant conduct attributable to the conspiracy, as his co-conspirator's actions were both foreseeable and within the scope of his criminal agreement.  *Gilliam*, 987 F.2d at 1012-13; U.S.S.G. § 1B1.3(a)(1)(B).

Notably, and as discussed in more detail in the analysis of the aggravating role enhancement under U.S.S.G. §  3B1.1(c) below, the "role [Young Sr.] agreed to play in the operation" was one of a supervisor, leader, manager, or organizer of the criminal activity.  *Bolden*, 325 F.3d 471, 499. Young Sr. was both the original architect of the conspiracy and the primary director of its activities. He was the only co-conspirator that was unquestionably involved throughout the entire life of the conspiracy, and he was an active participant and leader in each type of activity that led to the amalgamation of  relevant conduct in this case.  Given his active supervisory role, the Court finds that Young Sr. can be held accountable in relevant conduct for the entire scope of the conspiracy.

In the indicted conduct category, as noted above, the testimony at trial establishes by a preponderance of the evidence that Young Sr. is responsible for the total loss amount of $229,197 for his direct participation in the offenses of conviction. U.S.S.G. § 1B1.3(a)(1)(A).

First, in the unindicted conduct category, the value of the four stolen items seized from the Boyd Farm is properly attributed to Young Sr.'s relevant conduct under either U.S.S.G. §§ 1B1.3(a)(1)(A) or 1B1.3(a)(1)(B).  Given the scope of the conspiracy and Young Sr.'s extensive participation, the only reasonable explanation for the items' location on Young Sr.'s  land is  his knowing act of possession, storage, or concealment.  As such, Young Sr. can be held accountable for the value of the four pieces of stolen equipment, for a total of  $13,092.

Second, Young Sr. is also accountable for the full amount of loss attributable to the search of the Summerfield property under either U.S.S.G. §§ 1B1.3(a)(1)(A) or 1B1.3(a)(1)(B).  As noted in the second table,  Jay Summerfield's testimony at trial connected Young Sr. to every one of the items that were retrieved as a result of this search. (Docket 153 at 234) (Q: "What, if any, pieces of that equipment on that farm that you're aware of did not involve Tommy Young Sr.?" A: "None of them.").  On cross examination, counsel for Young Sr. went through, item by item,  the entire list of stolen property that the Government has valued. At that time, and on redirect, Summerfield maintained that each piece of equipment seized involved some direct action by Young Sr. (Docket 154 at 29 (Q: "But in every one of those transactions, Tommy Young [Sr.] participated, you claim, in some form or manner?" A: "Yes.")).  Accordingly, the value of each of these items, for a total of $114, 472.61, is properly attributed to Young Sr.

Finally, Young Sr. is also accountable for the stolen equipment retrieved from Marcum's property.  Although Marcum generally utilized the amorphous description of  "the Youngs" when

describing the origins of the identified stolen items on his property, Marcum's testimony still directly implicated Young Sr. in *at least* two of the seven pieces of valued property that were recovered at his residence and, as the Court previously noted, Young Sr. is accountable for the remainder of the items as part of the conspiracy's relevant conduct that was both foreseeable and within the scope of his agreement. U.S.S.G. 1B1.3(a)(1). As such, the Court finds that the values of each of these seven items, for a total of $166,712*,* are appropriately attributed to Young Sr.'s loss calculation.

In total, the Government has proven by a preponderance of the evidence that the amount of loss directly attributable to Young Sr. is $523,473.61. As this figure is greater than $400,000 and less than $1,000,000, the Probation Office appropriately increased Young Sr.'s offense level by fourteen. U.S.S.G. § 2B1.1(b)(1)(H). Accordingly, Young Sr.'s objection is **OVERRULED**.

### b. *Young Jr.*

The question of Young Jr.'s participation in the criminal conduct constituting the conspiracy and his subsequent liability for the resulting harm is a complicated one. Young Jr.'s PSR notes that "[d]uring certain periods of the conspiracy between Tommy Young Jr., and his father, the defendant was detained as a juvenile and youthful offender. The probation officer does not assess any property stolen during the [periods of confinement] unless it was found on the property he shared with Tommy Young Sr." At the December 22, 2010, hearing in this matter, counsel for Young Jr. indicated that she didn't understand the Probation Office's method, and the Government argued that the loss figure for both Young Sr. and Young Jr. should be the same.

Once again, Young Jr. can be held accountable for all reasonably foreseeable criminal actions of his co-conspirators within the scope of his agreement to the conspiracy. *Gilliam*, 987 F.2d

at 1012-13; U.S.S.G. § 1B1.3(a)(1)(B). The fact that he was incarcerated for a period of the conspiracy does not preclude the Court from crediting him with the activities of his co-conspirators. *See United States v. Brawley*, No. 91-5563, 1992 WL 180737, at  *7 (4th Cir. July 31, 1992) (upholding attribution to defendant of drug quantities related to co-conspirator's activities which occurred while defendant was incarcerated). The crux of the issue is, to the extent that Young Jr. did not directly participate in the criminal acts, whether the criminal activities were both reasonably foreseeable to him and within the scope of his agreement to the conspiracy.

According to the PSR, Young Jr. was confined in varying detention centers from: (1) January 22, 2004 – February 2, 2004; (2) June 2, 2004 – July 9, 2004; (3) August 26, 2004 – December 22, 2005; and (4) October 16, 2008 – August 3, 2009. Given Young Jr.'s relatively subordinate role in the conspiracy and intermittent participation during its early years, the Court is not inclined to hold him accountable for the largely unforeseeable criminal activities of his co-conspirators that occurred while he was incarcerated. *Compare United States v. Meacham*, No. 95-16211, 1996 WL 494284 (6th Cir. August 28, 1996) (reasonably foreseeable to "major player in conspiracy" that enterprise would be maintained while he was incarcerated) *with United States v. Johnson*, 956 F.2d 894, 906 (9th Cir. 1992) (incarcerated co-conspirator not held responsible for acts of co-conspirators where she was a minor participant), *superseded by regulation on other grounds*, U.S.S.G. § 3E1.1, *as recognized in United States v. Martinez-Martinez*, 369 F.3d 1076, 1089-1090 (9th Cir. 2004). Accordingly, the Court excludes from Young Jr.'s relevant conduct any item that was stolen during his periods of confinement.

When Young Jr. was freed from confinement, even for brief periods, the evidence shows that he was an active participant in the conspiracy. The Court believes that the evidence at trial

28

establishes that he was, more likely than not, a direct participant in the vast majority of criminal acts involving the stolen property identified in this case.  However, to the extent that evidence of Young Jr.'s active participation has not been established, the Court finds that he remains accountable for the remainder of the relevant conduct attributable to the conspiracy, as his co-conspirator's  actions were both foreseeable and within the scope of his criminal agreement.  *Gilliam*, 987 F.2d at 1012-13; U.S.S.G. § 1B1.3(a)(1)(B).

First, Young, Jr's agreement to the criminal activity clearly encapsulates the relevant conduct that has been attributed to the conspiracy in this case.  Not only was Young Jr. fully cognizant of the entire conspiracy, he actually "agreed to play" an active "role" at every level of the operation. *Bolden*, 325 F.3d at 499.  As established by the evidence at trial, Young Jr. was involved in the theft, transport, storage, concealment, and sale of stolen items for profit, and he was particularly active in the role of  delivering stolen items to both Summerfield and Marcum for storage.  All of the relevant conduct in this case stems from transactions that were well within the scope of Young Jr.'s typical criminal activities, and were thus completely within the "scope of the specific conduct and objectives embraced by [his] agreement." U.S.S.G. § 1B1.3 cmt. n.2.

Second, the ongoing criminal acts of Young Jr.'s co-conspirators, particularly his father, were entirely foreseeable to him.  When he was not incarcerated, Young Jr. lived on the Boyd farm with his father, worked closely with him, and was otherwise deeply involved and aware of the criminal activity that is the subject of the Indictment.  Given the nature of the ongoing offense, the close proximity of his co-conspirators, and his own ongoing criminal activities, Young Jr. could clearly anticipate the acts that led to the loss determination in this case, even if he was not an active participant in each instance.

In sum, largely in accordance with the recommendation of the Probation Office, the Court finds that Young Jr. is accountable for the entire amount of loss attributable to the conspiracy, *excluding only* those items that were stolen while he was in custody.

In the indicted conduct category, as noted in the first table, the Government established evidence of Young Jr.'s direct participation in all the overt acts, save three: (1) Overt Act (b), the 2000 Takeuchi Excavator valued at $32,000; (2) Overt Act (c) and Count Two, the Caterpillar Skid Steer valued at $47, 285; and (3) Overt Acts (d-e) and Count Three, the Haulin Enclosed Trailer with Equipment valued at $36,000. The Court finds that, of these three items, Young Jr. can only be held accountable for the value of the $32,000 Takeuchi excavator, as it was stolen on March, 26, 2004, during one of his brief periods of release from juvenile custody.[10]  Accordingly, the total amount of loss attributable to Young Jr. for the indicted conduct is $146,197.

In the unindicted conduct category, all of the items seized from the Young, Summerfield, and Marcum properties, save two, are properly attributed to Young, Jr under either U.S.S.G. §§ 1B1.3(a)(1)(A) or 1B1.3(a)(1)(B). The items on the Summerfield farm were all stolen between July 17, 2007, and June 24, 2008, and were seized on July 24, 2008. Young Jr. was free from confinement and participating in the conspiracy during this entire period. Similarly, the items found on the Marcum property were all stolen between December 28, 2007, and  August 12, 2008, and were seized on August 24, 2008. Again, Young Jr. was free for this period and participating in the conspiracy.  As for the items seized from the Boyd Farm on March 30, 2006, only the  "red 1998 Cargo Express enclosed trailer," valued at $2,492, and the "eighteen foot Appalachian trailer,"

---

[10] Both the Caterpillar skid steer (stolen April 15, 2005) and the Haulin Enclosed Trailer (stolen July 8, 2005) were stolen while Young Jr. was in custody.

valued at $3,100, were stolen or potentially stolen on a date coinciding with Young Jr.'s confinement.[11] As such, they are properly excluded.

Accordingly, the total amount of loss attributable to Young Jr. for his uncharged relevant conduct is $7,500 for the items seized from the Young property, $114,472.61 for the items seized from the Summerfield property, and $166,712 for the items seized from the Marcum property.

In total, the Government has proven by a preponderance of the evidence that the amount of loss attributable to Young Jr. is $434,881.61. As this figure is greater than $400,000 and less than $1,000,000, the Probation Office appropriately increased Young Jr.'s offense level by fourteen. U.S.S.G. § 2B1.1(b)(1)(H). As such, Young Jr.'s objection to this enhancement is **OVERRULED.**

### B. 10 or More Victims (Sr. & Jr.)

Young Sr. and Young Jr. object to the application of the U.S.S.G. § 2B1.1(b)(2)(A)(i) enhancement, which increases the offense level by two if the offense involved more than ten but fewer than fifty victims.[12]   The term "victim" is defined in the commentary as "any person who sustained any part of the actual loss determined under subsection (b)(1)." U.S.S.G. § 2B1.1 cmt. n.1. As noted earlier, "actual loss" is the pecuniary harm that a defendant knew or should have known was a potential result of the offense.  U.S.S.G. § 2B1.1 cmt. n.3(A)(i), (iii-iv).  The Government must prove "the facts underlying [this] enhancement by a preponderance of the evidence." *United States v. Hill*, 322 F.3d 301, 307 (4th Cir. 2003).

---

[11] The Cargo express trailer was stolen on July 15, 2005, when Young Jr. was confined, and the date of theft for the Appalachian trailer has not been provided to the Court.

[12] The Court notes that both named co-conspirators, Jay Summerfield and Dennis Marcum, received this enhancement. *United States v. Jay Summerfield*, No. 2:09-cr-00149-001 (S.D. W. Va. 2010); *United States v. Dennis Marcum*, 2:09-cr-00202-001 (S.D. W. Va. 2010).

The items named in the indictment reveal eight victims of Defendants' conduct: Mark Stine, United Rentals, Peterson Contractors, Specialty Fitters, Dale Yost Construction, Frances Puster, Raymond Mills, and Hurst Tractor and Equipment. Factoring in the additional victims for the stolen property found on the Boyd farm, Jay Summerfield's farm, and Dennis Marcum's property, the total rises to at least seventeen: Mazoo Contractors, Trio Concrete, Northwest Services, Muskingham Tractor and Equipment, Shearer Equipment, Thorn Equipment, Moore's Lawn and Garden, Rock's Trailer Services, and Tom Masano Ford.[13] This list represents the *most conservative* number of victims based on the information available to the Court, and it totals well above ten. Therefore, the Court finds that the two-level enhancement pursuant to a U.S.S.G. § 2B1.1(b)(2)(A)(i) is properly applied, and Defendants' objections to the same are **OVERRULED**.

### C. Business of Receiving and Selling Stolen Property (Sr.)

Young Sr. challenges the application of a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(4) for being in the business of receiving and selling stolen property. This guideline provides for a two-level enhancement if "the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property." U.S.S.G. § 2B1.1(b)(4). The commentary provides a non-exhaustive list of factors for the Court to consider when determining the applicability of this enhancement: "(A) The regularity and sophistication of the defendant's activities[;] (B) The value and size of the inventory of stolen property maintained by the defendant[;] (C) The extent to which the defendant's activities encouraged or facilitated other crimes[;] (D) The defendant's past activities involving stolen property." U.S.S.G. § 2B1.1 cmt. n.5.

---

[13] Although there are presumably more victims connected with the items found on Marcum's property, only Tom Masano Ford has been identified to the Court.

The Fourth Circuit has characterized these factors as a "totality of the circumstances" test.  *White*, 2003 WL 22332377, at *4.[14]  Again, the Government must establish the appropriateness of this enhancement by a preponderance of the evidence.  *Hill*, 322 F.3d at 307.

First, Young Sr.'s criminal activities displayed both "regularity and sophistication." U.S.S.G. § 2B1.1 cmt. n.5.  For approximately five years, from June of 2003 to July of 2008, Young

---

[14]   Although Young Sr. has not asserted this as grounds for his objection to this enhancement, the Court would note that five Circuit Courts of Appeals outside of the Fourth Circuit currently take the position that U.S.S.G. § 2B1.1(b)(4) does not apply to a defendant who sells only property that he himself has stolen. *United States v. Kimbrew*, 406 F.3d 1149, 1152 (9th Cir. 2005) (advocating a totality of the circumstances approach to the "in the business" question combined with the requirement that a defendant "be a fence – to receive and sell property stolen by others – before the enhancement applies"); *United States v. Maung*, 267 F.3d 1113, 1118 (11th Cir.2001) (stating that "a thief who sells goods that he himself has stolen is not 'in the business of receiving and selling stolen property'"), *abrogated on other grounds by Dolan v. United States*, --- U.S. ----, 130 S.Ct. 2533 (2010); *United States v. McMinn*, 103 F.3d 216, 219-21 (1st Cir.1997) (guideline not meant to apply to defendant who sells only property he has stolen); *United States v. Sutton*, 77 F.3d 91, 94 (5th Cir.1996) (enhancement "a punishment for fences, people who buy and sell stolen goods, thereby encouraging others to steal, as opposed to thieves who merely sell the goods which they have stolen"); *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir.1990) ("a person in the business of receiving and selling stolen property is a professional fence and not a person who sells property that he has already stolen").

Arguably, the implication was made at trial that Young Sr. was the original thief of a large percentage of the equipment that he sold. However, none of Young Sr.'s convictions required a finding of his personal involvement in the actual theft, and Young Sr. himself has steadfastly maintained his innocence of all criminal wrongdoing.  Even Jay Summerfield, an integral member of this conspiracy, testified that he simply "picked up" the stolen items from Young Sr., stressing that he had no idea who actually stole the items.  Although the evidence presented at trial established that Young Sr. certainly stole a *portion* of the items that he sold, the Court finds that some, if not most, of the stolen items involved in Young Sr.'s business were provided by other thieves, particularly his co-conspirators.  *See United States v. Zuniga*, 66 F.3d 225, 229 (9th Cir.1995) (appropriate to apply enhancement to defendant who sold both items that he stole as well as items that others stole); *see also United States v. Misencik*, No, 95-5009, 1996 WL 3464, at *1-2 (4th Cir. Jan. 30, 1996) (per curiam) (enhancement properly applied to defendant that employed his co-conspirators as thieves).  For example, in addition to the numerous unidentified participants to the conspiracy referenced in the record, Young Jr. has been revealed to be a prolific thief, Summerfield testified to at least one instance where he stole a vehicle for Young Sr., and Defendants' PSRs recount Dennis Marcum's admission that he had "stolen motor vehicles for the Youngs and transported them to West Virginia on their behalf."

Sr. was involved in a series of ongoing, regular, and organized criminal transactions centered around the theft, transfer, purchase, storage, and sale of goods and motor vehicles stolen from a variety of states. Numerous parties were involved in this conspiracy, and the parties coordinated their efforts with the use of Trac phones and organized exchanges of stolen property. Further, evidence at trial established that Young Sr. facilitated many of the thefts by providing keys that could operate the stolen vehicles. Moreover, at least one of the co-conspirators, at the direction of Young Sr., was engaged in the activity of "cloning," altering, or removing the Vehicle Identification Numbers from the stolen items, which evinces a level of sophistication. *See generally United States v. Davis*, No. 05-4020, 2006 WL 297301, at *2 (4th Cir. 2006) (per curiam) (affirming district court's finding that "sophisticated means" included "fake Vehicle Identification Numbers and title documents").

Second, "the value and size of the inventory of stolen property maintained" by Young Sr. was substantial. U.S.S.G. § 2B1.1 cmt. n.5. A large inventory of stolen items, as detailed above, was discovered on the Young, Summerfield, and Marcum properties. The total value of the stolen goods handled by Young Sr. throughout the course of this conspiracy totals, in the very least, in the hundreds of thousands of dollars.

As for the last two factors, Young Sr.'s activities certainly "encouraged or facilitated other crimes." U.S.S.G. § 2B1.1 cmt. n.5. Specifically, his profitable enterprise encouraged his co-conspirators to steal, transport, store, and conceal the items that Young Sr. would then sell. Finally, Young Sr. also has a record of "past activities involving stolen property." U.S.S.G. § 2B1.1 cmt. n.5. In addition to extensive and far-ranging criminal activity over the five-year period of this conspiracy, Young Sr.'s criminal history reveals convictions for theft and receiving stolen property dating back to 1987.

34

On balance, the "totality of the circumstances" shown on the record of this case militates in favor of the enhancement.  Therefore, Young Sr.'s objection is **OVERRULED**, and the Court finds that a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(4) is properly applied in this case.

*D.  Offense Involved Organized Scheme to Steal or Receive Stolen Vehicles (Sr. & Jr.)*

Young Sr. and Young Jr. challenge the application of a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(12) for their involvement in an organized scheme to sell or receive stolen vehicles.[15]  This guideline provides for a two-level enhancement "if the offense involved an organized scheme to sell or receive stolen . . . vehicles or vehicle parts." U.S.S.G. § 2B1.1(b)(12). The commentary describes this subsection as applying to an "ongoing, sophisticated operation (e.g., an auto theft ring or 'chop shop') to steal or receive stolen . . . vehicles or vehicle parts."  U.S.S.G. § 2B1.1 cmt. n.10.  The term "vehicles" includes motor vehicles, a term which also applies to farm equipment. U.S.S.G. § 2B1.1 cmt. n.10; *see also* 18 U.S.C. § 2311.

The Court finds that the conspiracy involving the Youngs is properly characterized as an ongoing "auto-theft ring," and, for the reasons detailed in the discussion of Young Sr.'s U.S.S.G. § 2B1.1(b)(4) enhancement for being in the business or receiving and selling stolen property, Defendants' objection is **OVERRULED.**

*E.  Aggravating Role (Sr.)*

Young Sr. objects to his enhancement for playing an aggravating role as an organizer, leader, manager, or supervisor of the conspiracy to steal, transport, conceal, and sell stolen property. U.S.S.G. § 3B1.1(c) of the Sentencing Guidelines provides for a two-level enhancement "[i]f the

---

[15] The Court notes that both named co-conspirators, Jay Summerfield and Dennis Marcum, received this enhancement. *United States v. Jay Summerfield*, No. 2:09-cr-00149-001 (S.D. W.Va. 2010); *United States v. Dennis Marcum*, 2:09-cr-00202-001 (S.D. W.Va. 2010).

defendant was an organizer, leader, manager, or supervisor in any criminal activity other than that discussed in [§ 3B1.1] (a) or (b)."  In order to qualify for this enhancement, Young Sr. must be the "organizer, leader, manager, or supervisor of *one or more* other participants."  U.S.S.G. § 3B1.1, comment (n.2).  For the purposes of this enhancement, "[l]eadership over only one other participant is sufficient as long as there is some control exercised." *United States v. Rashwan*, 328 F.3d 160, 166 (4th Cir. 2003) (citing *United States v. Harriott*, 976 F.2d 198, 200 (4th Cir.1992)).  "The determination of a defendant's role must be made on the basis of  all relevant conduct."  *United States v. Love*, 134 F.3d 595, 607 (4th Cir.1998).  The commentary for this section provides seven factors for courts to consider when distinguishing between organizers, leaders, managers, supervisors, and other participants:

> [(1)] the exercise of decision making authority, [(2)] the nature of participation in the commission of the offense, [(3)] the recruitment of accomplices, [(4)] the claimed right to a larger share of the fruits of the crime, [(5)] the degree of participation in planning or organizing the offense, [(6)] the nature and scope of the illegal activity, and [(7)] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n. 4; *United States v. Sayles,* 296 F.3d 219, 224 (4th Cir. 2002).  If an aggravating role adjustment is warranted, the Court should "identify which factors in application note [4] justify its decision."  *United States v. Chambers*, 985 F.2d 1263, 1269 (4th Cir. 1993).

The evidence presented at trial supports an aggravating role enhancement in this case.  Most obviously, Young Sr. "recruit[ed] . . . accomplices" for involvement in the conspiracy and "claimed right to a larger share of the fruits of the crime." U.S.S.G. § 3B1.1 cmt. n. 4. Jay Summerfield testified that Young Sr. approached him, told him he knew about his prior criminal record, and asked if he "wanted to make some money." (Docket 153 at 196.)  Summerfield then joined the conspiracy and began storing and stealing equipment at the direction of Young Sr.  Similarly, Dennis Marcum

36

testified that Young Sr. approached him and intimated that he was aware of his criminal record, at which point Marcum began "working" for him. (Docket 154 at 261.)   Additionally, Young Sr. retained a "larger share of the fruits of the crime" in the form of the profits obtained from the actual sale of the items. U.S.S.G. § 3B1.1 cmt. n. 4.  Young Sr. paid Summerfield and Marcum a largely fixed fee, usually between three and five hundred dollars, on a per-item basis.

The evidence presented at trial also established that Young Sr. exercised primary "decision making authority" in "planning and organizing" the conspiracy while exercising "control and authority" over its members. U.S.S.G. § 3B1.1 cmt. n. 4.  Young Sr., along with his son, was the longest-standing member of the conspiracy, and the evidence established that Young Sr. was both the originator and primary architect of this scheme.  Summerfield and Marcum testified that Young Sr. gave them each a specific, delineated role to play.  Summerfield testified that he provided storage space for the stolen items and, at Young, Sr's direction, would locate certain property to steal. Young Sr. supplied Summerfield with several pre-paid Trac phones to facilitate and control Summerfield's criminal activities, and he also provided Summerfield with vehicle keys to facilitate the theft of items.  Young Sr. even gave Summerfield a total of $4,500.00 for legal assistance and living expenses after the execution of the search warrant on the Summerfield farm.  Marcum testified that his role in the conspiracy was similarly categorized; his job was to store stolen items on his property and, at Young Sr.'s direction, to engage in various activities intended to disguise the origins of the stolen property by altering, removing, or duplicating identifying vehicle and serial numbers. Notably, both Summerfield and Marcum testified that there were several more anonymous parties "working" for Young Sr.

Summerfield and Marcum both testified that they weren't acquainted with each other, and they appear to have been relegated to largely reactive, subordinate roles. This is to say nothing of the control and authority the Court suspects Young Sr. exercised over his son and co-conspirator, Young Jr., who was only seventeen at the time the conspiracy first began. In sum, the co-conspirator's testimony, which the Court finds to be reliable and credible, revealed that they, at least, regarded Young Sr. to be the leader and organizer of their activities. The Court agrees.

The Court finds that Young Sr.'s participation in the conspiracy, as evidenced by the aforementioned testimonial examples as well as the entirety of the record at trial, falls into the categories described in U.S.S.G. § 3B1.1 cmt. n. 4. Young Sr. was the architect of this conspiracy; he devised the scheme, was its primary beneficiary, exercised primary decision-making authority in planning and organizing it, recruited the members, and exercised control and authority over their activities. Therefore, a two-level enhancement for being an "organizer, leader, manager, or supervisor" in the criminal activity is appropriate pursuant to U.S.S.G. § 3B1.1(c), and Young Sr.'s objection is **OVERRULED.**

### F.  Use of a Minor (Sr.)

Young Sr. challenges the application of a two-level enhancement for the use of a minor, Young. Jr., in connection with his offenses. U.S.S.G. § 3B1.4 provides for a two-level enhancement "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense." The commentary defines "[u]sed or attempted to use" as "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4 cmt. n.1. This enhancement requires that a defendant engage in an "affirmative act to involve a minor in the

offense charged." *United States v. Feaster, Jr.*, Nos. 00-4829, 01-4332, 2002 WL 1930839, at *4 (4th Cir. Aug. 22, 2002) (per curiam) (citing *United States v. Ramsey*, 237 F.3d 853, 860 (7th Cir. 2001)). As such, the enhancement is appropriate if a defendant engaged in "*any affirmative act . . . to direct, command, encourage, intimidate, counsel, train, procure, recruit, solicit, or otherwise engage a minor with respect to the charged offense.*" *Id.* at *4 (citing *Ramsey*, 237 F.3d at 860). A "special relationship," such as a familial bond, is relevant to the Court's consideration of whether the defendant "encourag[ed]" the minor. *United States v. Cummings*, Nos. 00-4805, 00-4826, 00-4903, 2001 WL 1032368, at *1 (4th Cir. Sept. 10, 2001) (per curiam); *see also Ramsey*, 237 F.3d at 859-60 (holding that forming a partnership with a minor is "undeniably encouraging that minor to commit a crime").

Young Jr. was born November 26, 1986, and turned eighteen years old on November 26, 2004. Only Count One of the indictment, which details the conspiracy charge, involves conduct occurring prior to November 26, 2004. The relevant time frame for the conspiracy ran from "in or about June 2003 and continuing through at least August 2008." (Docket 1 at 1.) Therefore, there is a window of approximately a year and a half (June 2003 to late November 2004)[16] that Young Jr. was potentially involved in the conspiracy as a minor. Notably, Count One charged as an overt act of the conspiracy that, "[i]n or about June 2003 to August 2004," when Young Jr. was a minor, both Young Sr. and Young Jr. possessed and sold a "2001 New Holland Skid Steer Loader Model 190" that had been stolen on June 26, 2003.

---

[16] The Court notes that Young Jr. was incarcerated for a portion of this relevant timeframe: from Jan 1, 2004, to Feb 2, 2004, from June 2, 2004, to July 9, 2004, and from August 26, 2004, through his eighteenth birthday.

The evidence presented at trail supports both Young Sr. and Young, Jr's involvement in this overt act.  William Bishop testified that in the "summer of 2004,"  Young Sr. sold him a skid steer, which was later determined to be stolen.  (Docket 152 at 16-17.)  Bishop testified that Young Sr. had "a kid" with him during the sale that Young Sr. called "Tommy." (*Id.* at 20-21, 28).  Herbert Harold, who testified that he had known Young Jr. since childhood, confirmed that Young Jr. accompanied Young Sr. during the sale of the stolen skid steer to Bishop.  (*Id.* at 38.)

The Court finds the testimony of these witnesses to be credible and reliable.  This testimony paints a picture where Young Sr. took affirmative acts to engage his son in a criminal conspiracy prior to his eighteenth birthday.  This finding is further buttressed by the fact that the record is replete with evidence that Young Jr. indeed heeded his father's encouragement and became an active participant in the conspiracy well past his eighteenth birthday. Young Sr. certainly had a "special relationship" with his son, and he utilized the power differential that is inherent in such relationships in order to encourage, train, and engage Young Jr. in this conspiracy, starting with the sale of the stolen skid steer in the summer of 2004.  As Young Sr. "use[d]" Young Jr. when he was a minor in order to further the conspiracy, his actions warrant a two-level enhancement pursuant to U.S.S.G. § 3B1.4, and his objection is thus **OVERRULED**.

> *G.  Obstruction (Sr.)*

Young Sr. briefly argued at the December 22, 2010, hearing in this matter that he should not be assigned a two-level enhancement for obstruction of justice based upon his trial testimony. U.S.S.G. § 3C1.1 provides for a two-level enhancement if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive

conduct related to (i) the defendant's offense of conviction; or (ii) a closely related offense." It is proper to apply this enhancement based on a defendant's willful perjury at trial. *United States v. Dunnigan*, 507 U.S. 97, 95-96 (1993); *United States v. Hughes*, 401 F.3d 540, 557-60 (4th Cir. 2005). The elements of perjury for the purposes of this enhancement are identical to those for the substantive crime of perjury under federal law: "(1) false testimony (2) concerning a material matter (3) given with the willful intent to deceive (rather than as a result of say, confusion, mistake, or faulty memory)." *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995) (citing *Dunnigan*, 507 U.S. at 94). The government must prove each of these elements by a preponderance of the evidence. *Id.* Further, the Court itself must be convinced that the defendant perjured himself, independent of the jury's verdict. *United States v. Montoya-Carmona*, No. 05-4706, 2007 WL 28259, at *2 (4th Cir. Jan. 4, 2007) (citing *Smith*, 62 F.3d at 647 n.3).

On March 5, 2010, Young Sr. testified on his own behalf at the jury trial in this matter. The Government has offered the following non-exhaustive list of examples of Young Sr.'s willful and materially false testimony:

> Young Sr. testified that he did not know many of the witnesses who testified that they had purchased equipment which was determined to be stolen and further that he did not sell stolen equipment to them. See, Trial Tr. 118-119, 155-56, March 5, 2010 (did not know Bill Bishop and did not sell him equipment); 119 (did not know Herbert Harold and did not take equipment to Mr. Harold home); 120-21, 155-57 (knew Dana Holcomb but did not sell him a Takeuchi excavator); 127, 159-61 (did not sell stolen trailer to David Morton). Additionally, Young Sr. denied involvement in the thefts of any equipment. See, Trial Tr. 139, March 5, 2010 (preparing for a camping trip in Florida making it physically impossible for him to have been present for a theft occurring in Morrow County, Ohio); 158-59 (did not steal Takeuchi excavator); 161-62 (did not steal Bobcat excavator with a trailer and conceal on property near his residence); 128-30, 169-71 (met Jay Summerfield only one time when Summerfield came to his house, did not steal equipment with him, did not have any criminal dealings with Summerfield); 148, 1169-70 (accusations of Summerfield, Hartsell Marcum, Bishop, Harold and Stump untrue).

41

(Docket 166 at 12.)  Any one of these examples could be sufficient to support a finding of perjury. *United States v. Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998).

As exemplified by these statements, the Court finds that Young Sr. was untruthful at trial with respect to material matters in this case.  First, Young Sr.'s testimony was patently false.  As noted by the Government, Young Sr. told a myriad of falsehoods on the stand concerning his participation in the charged criminal activity as well as his dealings with other testifying witnesses.  Young Sr.'s testimony on these issues was directly contradicted by numerous credible witnesses as well as the physical evidence presented at trial.  Second, Young Sr.'s false testimony was material, as it "concerned the heart of the case," i.e., whether he was in fact guilty of the numerous counts charged in the indictment.  *United States v. Sun*, 278 F.3d 302, 314 (4th Cir. 2002).  Finally, Young Sr. testified falsely with the deliberate and willful intent to deceive. His testimony was carefully crafted to influence the judgement of the jury.  There is simply no possible way that Young Sr. could have been mistaken or confused as to so many material facts bearing his guilt.  As such, the Court is convinced, "independent of the jury's verdict," that Young Sr. was a categorically untruthful witness who perjured himself at his trial. *Smith*, 62 F.3d at 647 n.3.  His obstructive conduct warrants an upward adjustment by two levels pursuant to U.S.S.G. § 3C1.1, and the objection is **OVERRULED.**

*H.  Acceptance (Jr.)*

Young Jr. argues that he qualifies for the two-level acceptance of responsibility reduction. U.S.S.G. § 3E1.1(a) reduces a defendant's offense level by two if he "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  Notably, this adjustment is generally inappropriate for "a defendant who puts the government to its burden of proof at trial by

denying the essential factual elements of guilty, is convicted, and only then admits guilt and remorse." U.S.S.G. § 3E1.1 cmt. n.2.  In  "rare situations," such as when a defendant exercises his right to a trial in order to "assert and preserve  issues that do not relate to factual guilt," a  defendant who went to trial can still "clearly demonstrate an acceptance of responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.2; *see also United States v. Dickerson*, 114 F.3d 464, 470 (4th Cir. 1997) (stating that defendant who demands trial is eligible for reduction "only when 'a defendant goes to trial to assert and preserve issues that do not relate to factual guilt'– such as a constitutional challenge to a statutory provision, or a challenge to the application of the statute to his conduct").  The defendant must prove that he qualifies for this reduction by a preponderance of the evidence. *United States v. Hall*, No. 08-5211, 2009 WL 2196850, at *2 (4th Cir. July 24, 2009) (citing *United States v. Harris*, 882 F.2d 902, 907 (4th Cir. 1989)); *see also United States v. Nale*, 101 F.3d 1000, 1005 (4th Cir.1996) (stating that "the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct" in order to receive the reduction).

Young Jr. does not argue that he went to trial to assert and preserve issues unrelated to factual guilt; instead,  he argues that he qualifies for the reduction because  "[h]is behavior since trial has been cooperative and in compliance with the requirements of the guidelines" as exemplified by his cooperation with the presentence interview. (Docket 164 at 8.)  Further, although the Probation Office asserts that he has not demonstrated any remorse for his criminal conduct, Young Jr. argues that it is sufficient that he "recognizes and accepts that the jury found him guilty on three counts. . . . [and] has not denied his guilt since the trial." (Docket 165 at 5, 7.)  Cooperating with a presentence  interview, ceasing affirmative statements of innocence, and acknowledging the

*existence* of a jury verdict are simply not enough to push Young Jr. into the "rare" category of defendants who "clearly demonstrate an acceptance of responsibility" for their criminal conduct despite being convicted at trial.  U.S.S.G. § 3E1.1 cmt. n.2; *see also United States v. Harriott*, 976 F.2d 198, 202 (4th Cir. 1992) (reduction inappropriate for defendant that simply "agreed that he had been convicted" and did not otherwise demonstrate an affirmative acceptance of responsibility).  The burden is upon the defendant to establish that he qualifies for this reduction, and this burden has clearly not been carried here. The Court finds that Young Jr.'s extremely limited post-trial cooperation does not warrant the two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and his objection is **OVERRULED.**

    *I. Criminal History Objections*

        *i.    Government Objection (Sr. & Jr)*

Immediately prior to the December 22, 2010, hearing in this matter, the Government filed an additional objection to the calculation of criminal history points for both Young Sr. and Young Jr., to which Defendants concur.  In the presentence report, Young Sr., and Young Jr. each received criminal history points based upon a joint May 23, 2004, New York state conviction for two counts of criminal possession of stolen property. Young Jr. was also given criminal history points for an October 5, 2006, West Virginia state conviction for conspiracy to commit grand larceny.  The government argues that these convictions should be considered as relevant conduct for the instant offense and not as criminal history points.

Criminal history points are assigned for a defendant's "prior sentence[s]."  U.S.S.G. § 4A1.1. A "prior sentence" is "a sentence imposed prior to sentencing on the instant offense, *other than a sentence for conduct that is part of the instant offense*." U.S.S.G. § 4A1.2, comment (n.1) (emphasis

added).  Relevant conduct is conduct that is "part of the instant offense."  U.S.S.G. § 4A1.2 cmt. n.1. As described above, relevant conduct includes all acts committed by the defendant, "all reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity," and any "[c]onduct that is part of the same course of conduct or part of a common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(1), (a)(2).  To determine whether the prior convictions are part of the instant offense in the form of relevant conduct, the Court must engage in a "fact-specific inquiry."  *United States v. McManus*, 23 F.3d 878, 888 (4th Cir. 1994).  Relevant factors for the Court's consideration include "whether the crimes were committed within a short period of time, in close geographic proximity, directed at a common victim, solved during the same investigation, had similar *modus operandi*, compelled by similar motives, and involved the same substantive offense."  *United States v. Zelaya*, No. 96-4528, 1998 WL 386104, at *2 (4th Cir. June 19, 1998) (per curiam) (citing *United States v. Breckenridge*, 93 F.3d 132, 138 (4th Cir.1996)).

As the Government notes, "[i]n the instant case, among other things, the convictions and conduct occurred during the charged conspiracy, were evidence presented at trial, were compelled by the same motives, involved the same geographical locations, and involved the same substantive offenses."  The description of the convictions in question provided in the PSRs confirms these assertions.  In light of the facts presented in the PSRs and the agreement of the parties, the Court **SUSTAINS** the Government's objection to Defendants' criminal history calculation.  As such, Young Sr.'s and Young Jr.'s joint May 23, 2004, New York state conviction for two counts of criminal possession of stolen property[17] and Young Jr.'s October 5, 2006, West Virginia state

---

[17] The Court notes that Young Sr. acknowledged at the December 22, 2010, hearing in this matter that his separate objection to the counting of this conviction in his criminal history score has now
(continued...)

conviction for conspiracy to commit grand larceny should not contribute to either of their criminal history scores and should instead be considered as relevant conduct for the instant offense.[18]

ii.    *Young Jr. Objection*

Young Jr. argues that the PSR erred when it added two points to his criminal history score for his November 10, 2004, conviction for a destruction of property offense committed when he was seventeen years old.  Although the "hard copy" of the record of this conviction is presumably destroyed, the Probation Office utilized the presentence report compiled by Young Jr.'s state probation officer as well as juvenile court records to verify his confinement. According to these records, the destruction of property conviction resulted in Young Jr.'s confinement at the Industrial Home for Youth for a period of 377 days, from December 10, 2004, to December 22, 2005.  The Probation Office assigned two criminal history points for this conviction pursuant to U.S.S.G. § 4A1.2(d)(2)(A), which covers offenses committed prior to age eighteen and adds two criminal history points "for each adult or juvenile sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of his commencement of the instant offense."  It is undisputed that Young Jr. was released from confinement within five years of his commencement of the instant offense.[19]

---

[17](...continued)
been mooted.

[18]  The Government asserts, based upon police reports, that Young Jr.'s West Virginia state conviction involved a 1997 Dozer valued at approximately $35,000, and although the value in the joint New York convictions is undetermined, it is at least above the statutory offense value of $3,000.  These figures do not change the guideline loss calculation.

[19]  The commentary for U.S.S.G. § 4A1.2 specifies that the term "commencement of the instant offense" includes any relevant conduct.  U.S.S.G. § 4A1.2, comment (n.8).  The relevant conduct for the offense of conviction ranges from at least June 2003 to October 2008, placing Young, Jr's
(continued...)

The crux of Young Jr.'s argument seems to be that, as there is no physical record of the original juvenile sentence imposed, no more than one point should be added under U.S.S.G. § 4A1.2(d)(2)(B) (which adds one criminal history point for each "juvenile sentence imposed within five years of the defendant's commencement of the instant offense not covered in [§ 4A1.2(d)(2)(A)]").[20]  The Court finds this argument without merit.  The Court is permitted to rely on information that has "sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a); *see also United States v. Thompson*, No. 98-4542, 1999 WL 236144, at *1 (4th Cir. April 22, 1999) (per curiam) (not an abuse of discretion for the district court to rely on computerized records of a conviction where hard copy had been destroyed).  The Court finds that the information collected by the Probation Office contains the requisite "indica of reliability."  From these records, it is at least clear that Young Jr. *served* well over sixty days of a juvenile sentence for the destruction of property offense, and as such, his sentence was certainly for a period of confinement of *at least* sixty days.  As Young Jr. received a juvenile sentence to confinement of at least sixty days for a conviction incurred within five years of his commencement of the instant offense, he is properly

---

[19](...continued)
2005 release date for the unrelated destruction of property offense well within the requisite five-year period. *See also* U.S.S.G. § 4A1.2, comment (n.1) ("A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense.").

[20] The Court draws this from Young Jr.'s written objections; at oral argument, counsel focused on the fact that the destruction of property offense resulted in neither an *adult* conviction nor an *adult* sentence, which is undisputed and irrelevant for the purposes  for the purposes of adding two points pursuant to U.S.S.G. § 4A1.2(d)(2)(A).  Section 4A1.2(d) clearly applies here because the offense was committed on June 27, 2004, when Young Jr. was seventeen years old, and the pertinent subsection adds two points for each "adult *or juvenile* sentence to confinement of at least sixty days if the defendant was released from such confinement within five years of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A) (emphasis added).

attributed two criminal history points pursuant to U.S.S.G. § 4A1.2(d)(2)(A).  The objection is **OVERRULED.**

  *J. Restitution (Sr. & Jr.)*

  Young Sr. and Young Jr. object to the amount of restitution suggested by the Probation Office.  The PSRs suggest that both Defendants be held jointly and severally liable for the restitution amount that was ordered for co-conspirator Jay Summerfield,  for a total figure of $11,002.38.  The only basis for Defendants' objection is the argument that Summerfield's testimony linking himself to criminal conduct with the Youngs is unreliable.  As evidenced by the jury verdict, the record at trial, and the Court's own findings, this argument is without merit.  Accordingly, Defendants' objection is **OVERRULED.**  The issue of restitution will be further addressed at the sentencing hearing in this matter.

### III.  CONCLUSION

  For the foregoing reasons, Young Sr's and Young Jr.'s objections to the fourteen-level enhancement for an attributed loss value between $400,000 and $1,000,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(H), the two level enhancement for ten or more victims pursuant to U.S.S.G. § 2B1.1(b)(2)(a)(i), and the two level enhancement for involvement in an organized scheme to steal or receive stolen vehicles pursuant to U.S.S.G. § 2B1.1(b)(12), are **OVERRULED**.  Young Sr.'s objections to the two-level enhancement for being in the business of receiving and selling stolen property pursuant to U.S.S.G. § 2B1.1(b)(4), the two-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c), the two-level enhancement for use of a minor in connection with his offense pursuant to U.S.S.G. § 3B1.4, and the two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, are **OVERRULED**.  Young Jr.'s objections to not receiving an acceptance of

responsibility reduction pursuant to U.S.S.G. § 3E1.1(a), and to the attribution of two criminal history points pursuant to U.S.S.G. § 4A1.2(d)(2)(A), are **OVERRULED**. Young Sr.'s and Young Jr.'s objection to the restitution recommendation is **OVERRULED**.  The Government's objection to Young Sr.'s and Young Jr.'s criminal history calculation is **SUSTAINED**.

   **IT IS SO ORDERED**.

   The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

       ENTER:  March 11, 2011

     THOMAS E. JOHNSTON
     UNITED STATES DISTRICT JUDGE