**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

TOMMY EDWARD YOUNG SR.,

                    Petitioner,

v.                                    CIVIL ACTION NO.   2:13-cv-10108
                                    (Criminal No. 2:09-cr-00223-01)

UNITED STATES OF AMERICA,

                    Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner Tommy Edward Young Sr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "Section 2255 Motion").  (ECF No. 250.)  On May 6, 2013, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings of fact and recommendations for disposition ("PF&R").  (ECF No. 253.)  Magistrate Judge Eifert filed her PF&R, (ECF No. 280), on October 6, 2014, recommending that this Court deny Petitioner's Section 2255 Motion and dismiss this action with prejudice.   Petitioner filed timely objections to the PF&R on October 17, 2014 (the "Objections").   (ECF No. 285).

For the reasons that follow, the Court **OVERRULES** the Objections, (*id*.), **ADOPTS** the PF&R, (ECF No. 280), to the extent it is consistent with this Memorandum Opinion and Order,

**DENIES** Petitioner's Section 2255 Motion, (ECF No. 250), **DISMISSES WITH PREJUDICE** this case, and **DIRECTS** the Clerk to remove this matter from the Court's docket.[1]

## I.      Background

Petitioner's sole ground for bringing the current § 2255 action is that his trial counsel provided constitutionally ineffective representation when he failed to communicate a written plea proposal from the Government to Petitioner.   (*See* ECF No. 250 (the Section 2255 Motion) at 4.) In his initial written submissions, Petitioner asserted that he only became aware of the plea proposal after his trial and incarceration, when he requested that his trial counsel forward his case file and related documents.   Petitioner further alleged that his counsel never informed of the proposal or the government's willingness to negotiate a plea bargain and that had he been made aware of the proposal, he would have accepted its terms and pled guilty.   (ECF No. 252 (Petitioner's Declaration) at 1–2.)   In response, Petitioner's trial counsel, Matthew Victor, submitted an affidavit in which he indicated that he had no independent recollection of discussing Petitioner's referenced plea proposal, but that "it would be impossible for me to fail to discuss with [Petitioner] a possible plea resolution of his case."   (ECF No. 262.)   In order to assess Petitioner's allegations, Magistrate Judge Eifert conducted an evidentiary hearing on April 21, 2014, at which Petitioner, Mr. Victor, and one of Petitioner's previous attorneys, Wayne King, testified.   The following facts are drawn from the testimony adduced during that hearing, as well as the parties' filings of record.

On October 1, 2009, Petitioner and his son, Tommy Young, Jr., were named as Defendants in a seven count-indictment arising from Petitioner's interstate trafficking in stolen goods.   (ECF

---

[1] Petitioner's motion requesting bail pending the Court's determination of the merits of his Section 2255 motion, (ECF No. 312), is accordingly **DENIED AS MOOT**.

No. 1.)   Count One charged conspiracy, alleging that Petitioner and his son, along with unindicted co-conspirators Dennis Marcum, Jr. and Jay L. Summerfield, conspired to commit several offenses relating to the transportation and receipt of stolen goods in interstate commerce.   Counts Two through Seven are all substantive transportation and receipt offenses: Counts Two, Five, and Six allege instances of interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312; Count Three alleges possession of stolen goods in violation of 18 U.S.C. § 2315; and Counts Four and Seven allege instances of possession of a stolen motor vehicle in violation of 18 U.S.C. § 2313.   (*Id.*)

Petitioner was initially represented by Wayne King, an attorney from Petitioner's native Clay County.   Prior to the lodging of the indictment, the United States Attorney's Office for the Southern District of West Virginia contacted Mr. King and requested that Petitioner come to Charleston to discuss the federal investigation into Petitioner's illicit activities.   (ECF No. 276 (Tr. of Evidentiary Hr'g) at 78–79.)   At that meeting, which occurred in September 2009, Assistant United States Attorney Susan Robinson laid out the case against Petitioner and indicated that the Government would be willing to discuss a plea agreement in exchange for Petitioner's cooperation.   (*Id.* at 48–49, 80.)   According to Petitioner, his response was that he would only consider a plea agreement if the Government agreed to drop the charges against his son, a proposition that the Government rejected.   (*Id.* at 48–49.)   Following this meeting, Mr. King did not follow up with Ms. Robinson about a potential plea, and shortly thereafter was terminated from his representation of Petitioner due to a conflict.   (*Id.* at 80–81.)

In early November 2009, Mr. Victor was appointed to represent Petitioner.   Although Petitioner testified that he had no problems communicating with Mr. Victor, (*id.* at 10), the two

men provide divergent descriptions of the nature of Mr. Victor's representation.  According to Petitioner, the two met only a couple times and never discussed the Petitioner's applicable sentencing guidelines, the prospect of a plea, the potential for providing substantial assistance relating to other individuals involved in the offense, or the consequences associated with Petitioner testifying at trial.  (*Id*. at 10–14.)  Petitioner asserts that at the outset Mr. Victor informed him that he was looking at ten years in prison so he and Mr. Victor "might as well take our chance with the jury."  (*Id*. at 11.)

Mr. Victor, on the other hand, testified that he discussed all of these things with Petitioner, but that "from the very beginning," Petitioner denied any involvement in criminal misconduct and took a position that was "somewhat dismissive, if not downright contemptuous of the Government's case."  (*Id*. at 59.)  According to Mr. Victor, Petitioner never discussed the possibility of entering into a plea agreement, (*id*.), because he would never have considered a plea, (*id*. at 75.)  Although he was "sure that at some point" he discussed with Petitioner the benefits of a plea agreement based on the strength of the Government's case, (*id*. at 73), he testified that there was simply "no plea agreement . . . because [Petitioner] dismissed the Government's case," (*id*.).  In contrast, Petitioner asserts that he only maintained his innocence because in the absence of a guilty plea, he had no choice, (*id*. at 17–18), and that he would have accepted a guilty plea in order to allow himself to be with his wife, who at that time was dying from cancer, (*id*. at 15.)

Ultimately, Petitioner proceeded to trial, where he took the stand and affirmatively denied every allegation in the indictment.   (*See* ECF No. 155 (Tr. of Petitioner's Trial Test.) at 148–149 (denying accusations against him and declaring his innocence of the charges contained in the indictment); ECF No. 276 (Tr. of Evidentiary Hr'g) at 37) (Petitioner confirming, at the evidentiary

4

hearing in this case, that he took the stand and "affirmatively denied every single allegation in the indictment").)  Following a five-day trial, the jury returned a verdict of guilty against Petitioner on six of the seven counts in the indictment.  (ECF No. 129.)  On this basis, Petitioner was sentenced to a 132-month term of imprisonment on March 11, 2011.  (ECF No. 209.)  Petitioner appealed and his sentence and conviction were affirmed by the Fourth Circuit by written opinion entered April 30, 2012.  (ECF Nos. 244 and 245.)

Thereafter, Petitioner wrote to Mr. Victor on February 20, 2013, requesting various materials from Mr. Victor's case file that Petitioner deemed necessary to help him prosecute a collateral attack on his conviction and sentence.  (ECF No. 252 (Petitioner's Declaration) at 6–7.)  Mr. Victor complied, and Petitioner discovered in these materials, for the first time, a letter from AUSA Robinson to Mr. Victor, dated November 30, 2009, that forms the basis for the present petition (the "November Letter").  (*See id*. at 4–5.)  The stated purpose of the letter is to provide Mr. Victor "with information regarding the United States current position on relevant conduct with respect to [Petitioner] based upon facts known to the United States to date."  (*Id*. at 4.)  According to the Government's calculation, a guilty plea to "one or more" of the offenses charged in the indictment would expose Petitioner to an offense level of 28 under the United States Sentencing Guidelines.  The letter does not refer to any corresponding guideline range or make reference to a reduction based on acceptance of responsibility, but does go on to state that "[a]ny proposed plea offered by the United States would include both a charge to [the conspiracy count] and a substantive count."  (*Id*.)

In a second paragraph, the letter goes on to discuss the Government's investigation into "additional" of the Petitioner's conduct, implicating the federal arson statute and potentially

carrying a statutory maximum sentence of up to 20 years.   (*Id*. at 4–5.)   The letter represents that while Ms. Robinson was not then in a position to "offer a plea to your client regarding this uncharged conduct," she would be willing "to discuss it further with you if your client expresses a serious intent to negotiate a plea in this matter."   (*Id*. at 5.)   The letter concludes with the following caveat: "As always, as the investigation progresses, the facts and circumstances may change resulting in a change in the position of the United States regarding resolution of this matter."   (*Id*.)

Petitioner testified at the evidentiary hearing that Mr. Victor never showed him the November Letter, discussed it with him, or otherwise mentioned "any kind of plea."   (ECF No. 276 at 13.)   Petitioner now understands the letter to have offered him the opportunity to plead guilty to two of the counts of the indictment and subject him to a guideline range of 57 to 71 months, factoring in a three-level reduction for acceptance of responsibility.   (*Id*. at 14.) Petitioner asserts that had he been presented with the November Letter he would have taken a deal in line with that suggested and pled to two of the charges contained in the indictment.   (*Id*. at 29.) If necessary, Petitioner testified that he would have testified against his son in order to secure a deal with the Government.   (*Id*. at 30.)   According to Petitioner's testimony, the main reason he would have accepted the plea was "to be out with [his] wife."   (*Id*. at 19.)

Mr. Victor testified that in general, he would discuss plea negotiations with his clients and that, to the best of his recollection, he had never "failed to discuss a plea agreement, a plea proposal, no matter . . . how untenable or how realistic."   (*Id*. at 54; *see also id*. at 64 (testifying that "[e]very time there is a suggestion by the Government for a plea or a potential resolution of a case, you immediately take it to your client; you discuss it with your client in detail").)   With

respect to his representation of Petitioner specifically, however, Mr. Victor admitted that he had no recollection of reviewing the November Letter.  (*Id*. at 66.)  Mr. Victor avers that he was scheduled to meet with Petitioner at his office on November 30, 2009, shortly after the letter was received, but that Petitioner did not appear.  (ECF No. 262.)  Further, he avers that he did meet with Petitioner a few days later on December 5, 2009.  (*Id*.)  He admitted, however, that his written notes do not record any discussion of the letter with Petitioner, either at that meeting or at any other time.  (*Id*. at 66–67.)  Thus, while Mr. Victor testified that he "would want to say" that he recalled discussing the November Letter with Petitioner, (*id*. at 66), and that "to say that somehow I forgot to discuss this resolution of the case is like saying that I forgot to wake up this morning," (*id*. at 64), he provided no affirmative statement indicating that he had actually engaged in such discussion.

Petitioner argues that Mr. Victor's failure to communicate the November Letter represents deficient performance under Supreme Court precedent interpreting the right to counsel in the plea bargaining process, and in particular *Missouri v. Frye*, 132 S. Ct. 1399 (2012).  According to Petitioner, but for Mr. Victor's deficient performance, he would have accepted the "plea offer" represented in the November Letter and was thus prejudiced by the fact that his ultimate sentence significantly exceeded the guidelines range discussed in that letter.  (*See* ECF No. 251.) Following the evidentiary hearing, the Government filed a response to the Section 2255 Motion, arguing that Petitioner had failed to meet his burden of establishing constitutionally ineffective performance by a preponderance of the evidence.  (ECF No. 278.)

## II.    *PF&R and Objections*

7

As noted above, the Magistrate Judge recommends that Petitioner's Section 2255 Motion be denied.   In concluding that Petitioner failed to demonstrate ineffective assistance of counsel, the PF&R makes three proposed findings.   The first two are relevant to the performance prong of the familiar two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   The second relates to the prejudice prong.

First, the Magistrate Judge concluded that the November Letter did not constitute a formal plea offer and thus that Mr. Victor had no duty to communicate it to Petitioner.   (ECF No. 280 at 9.)   Even assuming the November Letter was such a formal plea offer, however, the Magistrate Judge found it more likely than not that Mr. Victor discussed its contents with Petitioner.   (*Id*. at 12.)   Magistrate Judge Eifert's conclusion is based in part on the fact that she found Mr. Victor's testimony on that issue to be "far more believable" than Petitioner's testimony.   (*Id*. at 15.)   Thus, even assuming the November Letter was the type of communication Mr. Victor was obligated to forward to his client, the PF&R concludes that because Mr. Victor likely did communicate the offer, Petitioner cannot carry his burden of showing that Mr. Victor's performance fell below an objective standard of reasonableness.   (*Id*. at 17.)   Finally, as an alternative basis for denying the Section 2255 Motion, the PF&R concludes that Petitioner is unable to satisfy the prejudice prong because even assuming the terms in the November Letter represented an actual plea offer, Petitioner cannot show that he would have accepted them.   Although Petitioner testified at the evidentiary hearing that he would in fact have accepted such a deal, the Magistrate Judge found that this testimony was "just not credible," given Petitioner's "devotion to [his son], coupled with [Petitioner's] history of dishonesty, and in view of the other evidence of record."   (*Id*. at 21.)

8

Petitioner objects to the PF&R findings at both steps of the *Strickland* analysis.   Mostly conceding that the November Letter did not constitute a "formal plea offer" as contemplated by *Frye*, Petitioner argues that even if the letter is only construed as "an invitation to the defense to negotiate a plea bargain," his counsel nonetheless had a duty to review it with Petitioner.   (ECF No. 285 at 5–6.)   Petitioner thus takes the position that it would have been objectively unreasonable for Mr. Victor not to discuss the November Letter with him, regardless of how that letter is classified.   Further, Petitioner objects to the PF&R's conclusion that he was actually apprised of the November Letter.   Petitioner points to the fact that Mr. Victor was unable to recall having specific discussions about the November Letter and the fact that his notes include no mention of any plea-related communication, either with Petitioner or with the Government.   (*Id.* at 2.)   Finally, Petitioner objects to the PF&R's finding regarding prejudice, arguing that it is based mostly on "conjecture" and a "misinterpretation of the hearing transcripts."   (*Id.* at 11.) Petitioner asserts that had he been made aware of the November Letter, he "would have chosen to negotiate plea conditions with the government," the result of which would have been changes to the indictment that would allow Petitioner to truthfully plead guilty.   (*Id.* at 12.)   According to Petitioner, then, the prejudice resulting from his counsel's allegedly deficient performance, was that it "denied the parties the opportunity to find common ground upon which to reach agreement." (*Id.* at 11.)

For the following reasons, the Court **OVERRULES** the Objections.

### III.     *Legal Standard*

**A.     Review of the PF&R**

The Court is required to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge "when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, the Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.    28 U.S.C. § 2255 Ineffective Assistance of Counsel**

"Section 2255 provides federal prisoners a mechanism, beyond a direct appeal, for challenging the legality of their sentence." *United States v. Hadden*, 475 F.3d 652, 660 (4th Cir. 2007. "Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon [the] petitioner to establish" the asserted grounds for relief "by a preponderance of the evidence." *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (citations omitted); *see, e.g.*, *Smith v. United States*, No. 5:03-cv-02366, 2007 WL 1029038, at *2 (S.D. W. Va. Mar. 31, 2007) ("For [the] [p]etitioner to prevail on his § 2255 claim . . . , he bears the burden of proving his allegations by a preponderance of the evidence." (citations omitted)); *State of W. Va v. Moore*, 897 F. Supp. 276, 280 (S.D. W. Va. 1995) ("In his § 2255 proceedings, [the petitioner bears] the burden of proving by a preponderance of the evidence that his conviction and sentence should be set aside.").

While a federal prisoner is generally encouraged to raise claims attacking his conviction or sentence on direct appeal first, a motion under § 2255 is "preferable to direct appeal for deciding

claims of ineffective assistance," as the district court is "the forum best suited to developing the facts necessary to determining the adequacy of representation" in "the first instance." *Massaro v. United States*, 538 U.S. 500, 504, 505 (2003). Because a § 2255 motion generally proceeds before the same district judge who presided over the earlier criminal proceeding, that judge, "having observed the earlier [proceedings], should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *Id.* at 506. Accordingly, "it is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" *United States v. King*, 119 F.3d 290, 295 (4th Cir. 1997) (quoting *United States v. Williams*, 977 F.2d 866, 871 (4th Cir. 1992)).

To establish ineffective assistance of counsel, Petitioner must show that (1) his attorney's performance was deficient, and (2) the deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To satisfy this burden, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This analysis "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). "[C]ounsel's performance will not be deemed deficient except in those relatively rare situations where, 'in light of all the circumstances, the identified acts or

11

omissions were outside the wide range of professionally competent assistance.'" *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690).   "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citation omitted).   To demonstrate prejudice under *Strickland*'s second prong, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## IV.    *Discussion*

As noted above, Petitioner's claim is based on his counsel's allegedly deficient performance in the context of plea negotiations with the Government.   There is no question that "[t]he Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir. 2013) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)).   As the Supreme Court has recently explained, the current reality is that "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Frye*, 132 S. Ct. at 1407.   Claims "involving the plea process" are governed by the two-part *Strickland* test described above. *Merzbacher*, 706 F.3d at 363 (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).   As applied to guilty pleas, the performance prong "is nothing more than a restatement" of the general standard of attorney competence set forth in the *Strickland* line of cases: an inquiry into "whether counsel's advice 'was within the

12

range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56, 58 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).   As for prejudice, a petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59; *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

The Supreme Court has recognized the broad scope of activity covered by the plea bargaining process and accordingly provided for different standards of prejudice to govern the different kinds of harm that can result from constitutionally ineffective assistance therein.   For example, where a petitioner seeks to attack a guilty plea by arguing that it was accepted as the result of constitutionally deficient performance, he satisfies the prejudice prong by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.   Conversely, a petitioner arguing that counsel's deficient performance prevented the acceptance of a government plea offer—either because it was rejected or allowed to lapse—satisfies the prejudice prong by showing that:

> but for the ineffective assistance of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler*, 132 S. Ct. at 1385.

## A.     Performance Prong

Petitioner's claim is in large part based on the Supreme Court's decision in *Frye*, a case in which the Court took the opportunity to clarify that "criminal defendants require effective counsel

during plea negotiations."[2]   132 S. Ct. at 1407–08.   While making clear that Sixth Amendment protection applies to the entire plea bargaining process, the Court acknowledged that such bargaining is, "by its nature, defined to a substantial degree by personal style," and that as such "it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process."   *Id*. at 1408.   In general, then, *Frye* declined to provide any rigid set of rules to govern defense counsel's "duty and responsibilities" in the plea bargain process.   *Id*.   On the facts of the case presented, however, defense counsel had failed to communicated a formal plea offer with a fixed expiration date to his client, and thus allowed that offer to lapse.   The Court made clear that in that specific situation, counsel's performance was constitutionally ineffective, holding that as a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."   *Id*.

*Frye*'s lesson is thus two-fold.   First, it left no doubt that counsel's performance during plea negotiations is subject to Sixth Amendment scrutiny.   Second, while it generally declined to

---

[2] *Frye* and *Lafler* were both decided on March 21, 2012, while Petitioner's criminal case was pending on direct appeal. In general, when the Supreme Court announces a "new rule," defined as one that "breaks new ground or imposes a new obligation on the States or the Federal Government," *Teague v. Lane*, 489 U.S. 288, 301 (1989), "a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding."   *United States v. Chaidez*, 133 S. Ct. 1103, 1107 (2013).   When the Court applies a settled rule, *i.e.*, one that would have been "apparent to all reasonable jurists," "a person [may] avail herself of the decision on collateral review."   *Id*. (citation omitted). The majority of the courts to address the issue have found that *Frye* and *Lafler*, which generally deal with applying an existing rule (*Strickland*) in a slightly new context, do not announce a new rule of constitutional law.   *See Sigman v. United States*, No. 2:12-cv-00991, 2015 WL 5684129, at *6 (S.D. W. Va. Sept. 28, 2015) (collecting cases); *see also Chaidez*, 133 S. Ct. at 1107–08 (noting that the *Strickland* standard "provides sufficient guidance for resolving virtually all claims of ineffective assistance, even though their particular circumstances will differ," and that the Supreme Court has routinely granted relief under *Strickland* "in diverse contexts without ever suggesting that doing so required a new rule" (citations omitted)).   Even if the cases did announce a new rule, however, Petitioner could still rely on them because new rules regarding the conduct of criminal prosecutions apply "retroactively to all cases, state or federal, pending on direct review or not yet final."   *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).   As Petitioner's case was pending on direct appeal and not yet final when the cases were announced, and a federal criminal defendant need not bring an ineffective assistance of counsel claim on direct appeal (and indeed is encouraged to bring such claims in a § 2255 proceeding), *see Massaro v. United States*, 538 U.S. 500, 504 (2003), he is not prohibited from availing himself of the *Frye* and *Lafler* precedents in this proceeding.

14

prescribe rules to govern that highly nuanced process, it did set forth one bright-line rule: counsel's failure to communicate a formal plea offer is unreasonable performance.   Thus, Petitioner is correct to point out that *Frye* "tells us that defense counsel has Sixth Amendment duties and responsibilities during the plea bargain process," but "left it for another day and case to define those duties and responsibilities."   (ECF No. 285 at 4.)   While defense counsel's failure to communicate a formal plea offer would be sufficient to demonstrate objectively unreasonable performance under *Strickland*'s first prong, the Court does not read *Frye* to make the presence of such a formal offer a necessary condition to stating an ineffective assistance claim arising out of the plea negotiation process.   *See Lechuga v. United States*, 15 F. Supp. 3d 788, 793 (N.D. Ill. 2014) (finding that *Frye*'s holding on the "narrow question" before it "does not translate into a requirement that a petitioner must receive a formal plea offer in order to establish ineffective assistance during plea negotiations" because "[d]efendants are entitled to effective assistance at all stages of the plea negotiation, and ineffective assistance at an early stage could prevent a formal offer from being made"); *United States v. Brooks*, No. 10–20078–JWL, No. 14–2624–JWL, 2015 WL 5837636, at *6 (D. Kan. Oct. 6, 2015) (finding that the absence of a formal offer did not "necessarily foreclose[]" the petitioner's ineffective assistance claim given *Frye*'s recognition that "the plea bargain process was a critical stage with respect to which defense counsel has a duty to provide adequate representation under the Sixth Amendment").

As an initial matter, the Court agrees with the Magistrate Judge's conclusion that the November Letter was not a formal plea offer, and thus that this case does not fall within *Frye*'s bright-line rule.   The conditional nature of the letter, the stated of purpose of which was to provide counsel "with information regarding the United States current position on relevant conduct,"

15

supports such a finding, as well as the fact that the letter specifically refers to any plea offer in future terms ("[a]ny proposed plea offered by the United States" would include a plea to specified charges) and indicates that the United States would be open to negotiating a global plea agreement with regards to certain uncharged conduct only if Petitioner "expresses a serious intent to negotiate a plea in this matter." (ECF No. 252 at 4–5); *see United States v. Ramirez*, 751 F.3d 604, 608 (8th Cir. 2014) (finding "at most an informal plea offer" where the government "merely expressed an interest in negotiating" and "explicitly disclaimed any promises or assurances to [the defendant]"); *United States v. Petters*, 986 F. Supp. 2d 1077, 1082–83 (D. Minn. 2013) (noting the connection between plea agreements and contracts, and finding a government communication that failed to discuss "the charges to which [the defendant] would acknowledge guilt, the factual basis for a plea, or restitution or forfeiture issues" did not contain "sufficiently definite" terms to constitute a formal plea offer). As indicated above, Petitioner does not object to this conclusion. (*See* ECF No. 285 at 4 (objecting to PF&R's conclusion that Petitioner should be required to show that November Letter was a formal plea offer in order to assert his claim, but not to its conclusion that the letter was not actually a formal plea offer). Accordingly, the Court adopts the PF&R's conclusion with respect to the formality of the plea offer and proceeds to consider whether, in the absence of a formal plea offer, Mr. Victor nonetheless rendered constitutionally deficient performance during Petitioner's plea process.

As discussed above, *Frye* expressly left open the scope of counsel's duties, short of communicating formal plea offers, during the plea bargaining process. In determining whether the failure to communicate more informal plea communications to a client constitutes unreasonable performance, courts have come to divergent conclusions. *Compare Carmichael v.*

16

*United States*, ---F. App'x---, 2016 WL 4524461, at *8 (11th Cir. Aug. 30, 2016) (finding the petitioner made sufficient allegations to warrant an evidentiary hearing, despite the absence of any formal plea offer, because defense counsel "had a continuing obligation to consult with [the petitioner] regarding important developments, including plea negotiations, in his case. . . . Otherwise, such informal plea negotiations would be unlikely to turn into formal plea offers" (citations omitted)), *and United States v. Polatis*, No. 2:10–CR–0364, 2013 WL 1149842, at 10 n.16 (D. Utah Mar. 19, 2013) (finding persuasive, as consistent with the "language and implications of *Frye* and *Lafler*," counsel's argument that defense counsel "can be constitutionally ineffective in the plea negotiation process if they fail to convey to the defendant the government's articulated willingness to resolve a case by negotiation or have proposed a resolution to the case"), *with Mavashev v. United States*, No. 11–CV–3724 (DLI), 2015 WL 1508313, at *9 (E.D.N.Y. Mar. 31, 2015) ("Any attempt to extend *Lafler* to an informal plea offer must be rejected, as the distinction between formal plea offers and informal plea offers is significant."), and *Montgomery v. United States*, No. 3:07–CR–00036–CRS, 2013 WL 6196554, at *5 (W.D. Ky. Nov. 26, 2013) (finding that where the government offer allegedly not communicated did not "rise to the level of a formal offer," defense counsel "did not render constitutionally defective performance for having failed to bring it to [the defendant's] attention").

Thus, while the law governing a counsel's duties during the plea negotiation phase is still developing, it is at least arguable that failure to communicate a preliminary communication like the November Letter could constitute deficient performance.  Such deficient performance, however, would necessarily be based on counsel's failure to apprise his client of the relevant plea communication.  In this case, the PF&R concludes that it was "more likely so than not so that

Victor discussed the substance of the November Letter with [Petitioner]," (ECF No. 280 at 9), a conclusion to which Petitioner strenuously objects. Given the Court's serious doubts regarding Petitioner's credibility and his inconsistent testimony as to the nature of his guilt throughout these proceedings, the Court agrees with the Magistrate Judge and finds that Petitioner has failed to meet his burden of showing that the November Letter was not communicated.

Although Mr. Victor did not come forth with any specific testimony indicating that he actually discussed the November Letter with Petitioner, the Court accords great weight to his testimony describing his general practice of handling federal criminal cases. Specifically, Mr. Victor testified that:

> I don't believe that I have ever, to the best of my recollection, . . . failed to discuss a plea agreement, a plea proposal, no matter how . . . ridiculous or how untenable or how unrealistic. I don't think it has ever happened that I would have failed to discuss a plea with a client.

(ECF No. 276 at 53–54.) Especially given the scale of Petitioner's case, which as noted above involved a five-day trial, Mr. Victor testified that the thought that he would not have discussed with Petitioner any potential resolution that would have avoided such a trial "is like saying that I forgot to wake up this morning. That is crazy." (*Id*. at 64.) Mr. Victor knew full well the potential import of the November Letter and noted that his practice upon receiving any communication from the Government suggesting any potential case resolution was to "immediately" take it to his client and "discuss it" in detail. (*Id*.)

The Court notes that Mr. Victor was a long-time Criminal Justice Act panel attorney who had been practicing criminal defense for approximately eighteen years at the time he took Petitioner's case, with significant experience in federal criminal cases and jury trials. Given that record, and the Court's prior experience with Mr. Victor, the Court finds it implausible that the

18

November Letter was not discussed.  Petitioner's testimony to the contrary does not alter that judgment.  It is well-documented in the record that Petitioner adamantly asserted his innocence, to the point of testifying at trial in his own defense and receiving an obstruction of justice enhancement at sentencing based on this Court's finding that Petitioner "was a categorically untruthful witness who perjured himself at trial."  (ECF No. 199 (Mem. Op. and Order overruling Petitioner's sentencing objections) at 42.)  Against that backdrop, Petitioner's most recent testimony is not credible as it relates to his involvement in the conspiracy and his reasons for asserting innocence throughout trial.  He continues to maintain that he was not involved in the conspiracy as charged and provided inconsistent testimony as to his son's involvement in the conspiracy.  (*See* ECF No. 276 at 20–21, 25–26, 30, 32–34.)  The Court finds particularly unconvincing Petitioner's stated basis for not pleading guilty: "if I was going to trial, how could I go to trial and plead guilty? It just – it didn't make no sense to me.  Either I pled guilty or I went to trial."  (*Id*. at 17–18.)  Of course, any criminal defendant faces a choice of whether to admit guilt or maintain innocence through trial, and Petitioner did not explain why he chose the latter course when he was, at least according to his post-conviction testimony, guilty of at least some of the charges against him.

Ultimately, given Mr. Victor's habit testimony and Petitioner's vigorous assertions of innocence, well-documented in Mr. Victor's testimony and well-remembered by this Court, the Court finds it more likely than not that Petitioner was apprised of the November Letter.  Indeed, in light of his "dismissive, if not downright contemptuous" attitude toward the charges against him and his total unwillingness to discuss the possibility of a plea agreement with Mr. Victor, (*id*. at 59), it is more likely that Petitioner brushed off discussion of the November Letter and never gave

19

it a second thought than that Mr. Victor utterly neglected to mention it.   Magistrate Judge Eifert

determined that Mr. Victor's testimony on this issue was "far more believable than [Petitioner's]

testimony."   (ECF No. 280 at 15.)   Petitioner does not object to this credibility determination,

and the Court finds it consistent with the record as a whole and this Court's own assessment of

Petitioner's credibility during his trial and related criminal proceedings.   Thus, the Court finds

that Petitioner has failed to demonstrate by a preponderance of the evidence that the November

Letter was not communicated to him or that Mr. Victor's representation was objectively

unreasonable.

## B.      Prejudice Prong

Even assuming that Mr. Victor did not discuss the letter and that such a failure would

constitute objectively unreasonable performance, as Petitioner argues, the Court finds that

Petitioner has failed to demonstrate any prejudice resulting from such deficient performance.   As

described above, "[t]o show prejudice in a case involving a plea offer, petitioners must demonstrate

a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been

afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the

prosecution canceling it or the trial court refusing to accept it.'"   *Merzbacher*, 706 F.3d at 366

(quoting *Frye*, 132 S. Ct. at 1409).   In a case where a defendant ultimately proceeds to trial,

"[h]aving to stand trial, not choosing to waive it, is the prejudice alleged," and he must accordingly

show that his "conviction or sentence, or both, under the offer's terms would have been less severe

than under the judgment and sentence that in fact were imposed."   *Lafler*, 132 S. Ct. at 1385.

In this case, the lack of a formal plea offer injects an added layer of conjecture into the

prejudice analysis.   As Petitioner's Objections make clear, the prejudice suffered in this case is

not that Petitioner was prevented from entering a specific plea agreement, but that he was denied the opportunity to "negotiate plea conditions with the government, in effort to find terms to which he could accept." (ECF No. 285 at 12.) Petitioner's testimony at the evidentiary hearing similarly reveals that had he been made aware of the November Letter at the time, he would have "negotiated it" and "tried to make arrangements to get [his son] a lesser charge or out of the case period." (ECF No. 276 at 25.) Thus, to carry his burden of demonstrating prejudice under the Sixth Amendment, Petitioner must show not only a reasonable probability that absent ineffective performance he would have accepted a plea offer and that that the court would have approved it, but an additional reasonable probability that "the government would have in fact made him a particular plea offer" in the first place. *Shnewer v. United States*, No. 13-3769 (RBK), 2016 WL 867461, at *21 (D.N.J. Mar. 7, 2016); *see Brooks*, 2015 WL 5837636, at *6 (noting that it "may be more difficult for a defendant to establish the necessary prejudice in the absence of a formal plea offer, since the defendant would be required to show that the Government would in fact have made a particular offer, that the defendant would have accepted it, and that the Court would have accepted the plea agreement"); *see also Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014) (finding that where a petitioner received "at most an informal plea offer," the petitioner failed to show prejudice where he could not show that "a reasonable probability existed that the government would have extended a plea offer").

Petitioner's claim is simply too speculative to carry that burden. The Fourth Circuit has explicitly recognized that the "lack of definition" in a plea communication can make it "substantially harder to determine it likely that a plea acceptable to [the defendant] would have been 'entered without the prosecution canceling it or the trial court refusing to accept it.'"

21

*Merzbacher*, 706 F.3d at 370 (quoting *Frye*, 132 S. Ct. at 1409).   Noting that it might be possible in some cases for a petitioner to show prejudice despite the "incipience" of the plea negotiations at issue, the court found that where "significant evidence weighed against finding the petitioner and the prosecutor would have agreed on a plea, the offer's nascence figures prominently in the calculus." *Id.*; *see also Defilippo v. United States*, No. 09–CV–4153 (NGG), 2013 WL 817196, at *6 (E.D.N.Y. Mar. 5, 2013) (noting that the lack of a formal plea offer " strongly weigh[ed] against a finding" that the petitioner could demonstrate prejudice in the plea bargaining context); *Brooks*, 2015 WL 5837636, at *6 (noting that it "may be more difficult for a defendant to establish the necessary prejudice in the absence of a formal plea offer"); *Shnewer*, 2016 WL 867461, at *24 (finding that the petitioner failed to show prejudice on a claim of ineffectiveness in plea bargaining, in the absence of a formal plea offer, where he could not show a reasonable probability that "a particular plea offer would have been offered, what terms this hypothetical plea offer would have [included, or] that he would have received a lesser sentence had [his counsel] pursued further plea negotiations").

In this case, as in *Merzbacher*, there is significant evidence indicating that Petitioner and the Government would not have reached a plea agreement absent Mr. Victor's allegedly deficient performance.   For one thing, Petitioner was made aware of the Government's willingness to pursue plea negotiations as early as September 2009, before he had even been indicted.   (ECF No. 276 (Tr. of Evidentiary Hr'g) at 78–81 (Petitioner's former attorney testifying that he and Petitioner met with federal prosecutors in September 2009 to discuss the Government's willingness to discuss a plea); *id.* at 48 (Petitioner testifying that the September 2009 meeting included plea discussions, but that he told government officials he would be willing to discuss a

plea only if they would drop charges against his son).)   The November Letter merely reasserted the Government's willingness to negotiate a plea deal in light of the indictment, provided Petitioner would express, as he had failed to do to that point, "a serious intent to negotiate a plea in this matter," and plea to a conspiracy charge.   (ECF No. 252 at 4–5.)   Thus, as the November Letter would have done no more than confirm to Petitioner the Government's willingness to deal, a fact Petitioner had been aware of since his first contact with federal officials, it is unlikely that counsel's explicit discussion of this letter with Petitioner would have affected the outcome of the plea process in this case.   As Mr. Victor testified, Petitioner "never" asked him about the possibility of negotiating a plea with the Government, despite having knowledge that it would be open to plea negotiations under certain conditions.   (ECF No. 276 at 59.)

This general disinterest in pursuing a plea agreement is perhaps unsurprising given Petitioner's adamant assertion of innocence at trial, which as described above included taking the stand to deny criminal responsibility as to all charges in the indictment.   Petitioner did so with full knowledge of the consequences of providing false testimony.   (*See id*. at 35–36 (Petitioner acknowledging that, at least at the time, he understood the Court's warning that testimony asserting innocence could subject him to certain sentencing enhancements and that false testimony could subject him to prosecution for perjury).)   Moreover, Mr. Victor testified that from the beginning, Petitioner "denied any involvement in any criminal misconduct."   (*Id*. at 59.)   According to Mr. Victor, Petitioner was "very dismissive" and "almost contemptuous" of the Government's case against him.   (*Id*. at 61.)   Mr. Victor believed that Petitioner had "convinced himself that he is innocent," that "the Government had no case against him," and that he would win at trial.   (*Id*. at

73.)  With respect to the Government's charges, Mr. Victor stated that the one word that could describe Petitioner's attitude was "deny, deny, deny."  (*Id*. at 60.)

Given these assertions of innocence with respect to the charges contained in the indictment, and especially the conspiracy charge, a plea to which the Government insisted must be part of any deal, there is significant doubt that the parties would have been able to come to a plea agreement that was acceptable to both sides.   Even now, Petitioner asserts that he did not conspire with any individual named in the indictment, (*id*. at 21), and that his basis for pleading to a conspiracy charge at the time was that he would have provided the Government with the names of three other individuals with whom he did conspire, and that he would have pled to such a revised conspiracy charge.  (ECF No. 285 (the Objections) at 12.)   This argument contemplates a completely new and hypothetical case, involving the addition of some defendants and removal of others, and there is simply no indication that the Government would have offered Petitioner a plea deal of any sort in accordance with this speculative post hoc case realignment.   The chain of reasoning that Petitioner seeks to have the Court indulge—that had Mr. Victor shown him the November Letter, he would have negotiated with the Government to get his son out of the case and charge three new individuals, and then that the Government would have offered him a favorable plea agreement to charges involving the conduct of these other individuals—is simply too attenuated to suggest a reasonable probability of *Strickland* prejudice in this case.   Even if Petitioner would have pled to such a deal, his argument that it would have even been offered requires a degree of speculation too significant to allow him to meet his burden.

At bottom, however, the central problem with Petitioner's argument is that he cannot show a reasonable probability that he would have accepted any plea offer of any kind at any time before

his trial.   Although he now asserts that he would have accepted a plea that provided for a guidelines range in line with that suggested by the November Letter, "a defendant who has actually testified to a jury that he is innocent faces a formidable barrier to convince the court that he really wanted to plead guilty."   *Williams v. United States*, No. 4:12 CV 252 CDP, 2013 WL 6410015, at *4 (E.D. Mo. Dec. 9, 2013); *see also Frye*, 132 S. Ct. at 1411 (finding that the petitioner had satisfied the prejudice prong "because he pleaded guilty to a more serious charge").   Although the Supreme Court "has not yet resolved what, if anything, a petitioner must show in addition to his own credible post hoc testimony and a sentence disparity" to satisfy the prejudice prong in a plea negotiation claim, it is "entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible." *Merzbacher*, 706 F.3d at 366–67; *see also United States v. Slane*, Criminal No. 11–81, Civ. A. No. 14–938, 2015 WL 728481, at *21 (W.D. Pa. Feb. 19, 2015) ("In instances where a defendant maintains innocence at trial and testifies in his or her own defense consistent with such innocence, the Court must reconcile the apparent inconsistencies between the proffered allegations [that he would have accepted a plea offer] and the earlier statements.").

Initially, the lack of a formal plea offer in this case makes it difficult for Petitioner to demonstrate a sentence disparity.   Although the November Letter discussed certain projected sentencing guidelines based on the facts as known at the time, it did not provide for any definite sentencing recommendation, so any contention that the Government would have eventually made such a formal offer or that the Court would have accepted the recommended sentence, requires a healthy dose of conjecture.   *See Gaskin v. United States*, 591 F. Supp. 2d 247, 255 (W.D.N.Y. 2008) (noting that where a plea offer contains no sentencing recommendations from the

government, any statement by Petitioner about what his sentence would be under such a plea is "merely speculative"). In any case, even if Petitioner could show that he had been presented definite sentencing terms that were more favorable than the sentence he ultimately received, a significant disparity in sentence "does not mandate a finding of prejudice in all cases." *Muyet v. United States*, Nos. 03 Civ. 4247 (PKL), 95 Cr. 941 (PKL), 2009 WL 2568430, at *5 (S.D.N.Y. Aug. 19, 2009). Of course, as noted above, where a petitioner's testimony that he would have taken the more favorable plea deal is not credible, a finding of prejudice is not warranted.

Here, the Magistrate Judge who presided over the evidentiary hearing found that Petitioner's testimony that he would have accepted the offer, even if the terms of the offer would have required him to testify against his son, "not credible," "improbable," and "unconvincing," given Petitioner's devotion to his son and "history of dishonesty." (ECF No. 280 at 21.) In his Objections, Petitioner argues in support of his contention that he would have pled guilty, asserting that viewed in the proper light his testimony regarding his willingness to plea "becomes completely credible." (ECF No. 285 at 13.) To the extent this can be viewed as an objection to the Magistrate Judge's credibility determination, a district court must conduct a de novo determination on credibility, but need not conduct a de novo evidentiary hearing unless it intends to reject a magistrate judge's determination. *United States v. Boatrite*, ---F. Supp. 3d---, 2016 WL 698113, at *4 (N.D. W.Va. Feb. 22, 2016). "A magistrate judge's credibility determinations based on live testimony are entitled to deference where they are supported by the record as a whole." *Id*.

For the reasons discussed above, the Court finds that the Magistrate Judge's credibility determination on this issue is supported by the record as a whole. There is simply no indication in the record, other than Petitioner's post hoc contentions to the contrary, that Petitioner would

have considered accepting guilt of the conspiracy charge as alleged in the indictment against him. While Petitioner may have considered entering into an agreement to allow his son to go free, the November Letter included no mention of his son and the Government ultimately proceeded to take its case against Petitioner's son to trial.   That Petitioner would have taken a plea deal that did not provide an out for his son, when at his evidentiary hearing he continued to maintain that he would have "tried to work out something for [his] son, too," (ECF No. 276 at 25), is not a conclusion that finds support in the record.   In light of Petitioner's vehement claims of innocence and testimony during trial, the Court finds that his present-day testimony to the contrary is not credible and insufficient to demonstrate that he would have been able to come to an acceptable plea agreement with the Government before trial.   *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) (noting that "in most circumstances a convicted felon's self-serving testimony is not likely to be credible"); *United States v. Gonzalez-Rivera*, 217 F. App'x 166, 170 (3d Cir. 2007) (noting that where a petitioner maintained his innocence throughout trial, his after-the-fact assertion that he was prejudiced by not entering into a plea agreement due to the ineffectiveness of counsel was "far too speculative" and "belied by the evidence below").

In short, the record provides no reasonable probability to conclude that, had Mr. Victor apprised Petitioner of the contents of the November Letter, "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. at 1409.   Absent more evidence indicating that any failure by Mr. Victor prevented Petitioner from receiving an actual plea offer containing recommended terms more favorable than his ultimate sentence, or that Petitioner would have actually accepted such an offer,

the Court cannot find that Petitioner has satisfied his burden of demonstrating prejudice in this case.

## V.    *Conclusion*

For the foregoing reasons, the Court **OVERRULES** the Objections, (ECF No. 285), **ADOPTS** the PF&R, (ECF No. 280), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** the Section 2255 Motion, (ECF No. 250), **DISMISSES WITH PREJUDICE** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

The Court has also considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c).   A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2).   The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).   The Court recognizes that the law governing counsel's performance during plea negotiations is unsettled.   Moreover, the Court's factual determinations with respect to communication of the November Letter and the speculative nature of Petitioner's claimed prejudice are close calls subject to reasonable dispute.   At the very least, reasonable jurists could find these matters debatable.   Accordingly, the Court concludes that the governing standard is satisfied in this instance and hereby **GRANTS** a certificate of appealability allowing Petitioner to appeal this decision in its entirety.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:　　　September 29, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE